[No. 569-2. Division Two. February 18, 1972.]

JAMES H. MCMENAMIN et al., *Respondents,* v. DOROTHY E. BISHOP, *Appellant.*

*Patrick M. Steele,* for appellant.

*Hugo Metzler, Jr.* (of *Metzler & Sauriol*), for respondents.

PEARSON, J.—This appeal raises the question of whether or not an exclusive real estate listing agreement is a unilateral or a bilateral contract. The defendant, Dorothy E. Bishop, listed her Pierce County home with the plaintiff, McMenamin's, a real estate company. She had obtained employment in Seattle. The agreement she signed was entitled "Real Estate Broker's Employment Contract" and provided:

> THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, or of exchange or conveyance of said property, or any part thereof, during the term of your exclusive employment, *or in case I withdraw the authority hereby given prior to said expiration date,* I agree to pay you the said commission just the same as if a sale had actually been consummated by you.

(Italics ours.) The listing period was from March 21, 1970 to July 21, 1970. The selling commission rate was 6 per cent of the selling price, if and when the plaintiff produced a ready and willing buyer. It was undisputed that plaintiff immediately commenced advertising the home for sale and commenced showing it to prospective customers. However, by May 1, 1970 defendant lost her employment in Seattle and some time during May she called Richard McMenamin in plaintiff's office, indicating her intentions of withdrawing the house from the market. The facts are disputed as to the substance of the telephone conversation. Plaintiff's version is that defendant indicated her intentions of withdrawing the house from the market, but when she was advised that she could not do so under the listing agreement without liability for the real estate commission, she instructed McMenamin to proceed in the search for a buyer. Defendant denies this, claiming she completely revoked plaintiff's authority to sell.

On June 15, 1970, plaintiff's salesman showed the house to a prospective buyer at a time when defendant was not at home. Shortly thereafter, the buyer signed an earnest

money agreement and defendant refused to complete the transaction. This action seeking judgment for real estate commission and attorney's fees ensued. Defendant cross claimed for damages due to mental anguish, as a result of plaintiff's alleged harassment in attempting to collect the real estate commission. It is clear that the prospective buyer was a ready, willing and able purchaser. The trial court allowed judgment against the defendant for a brokerage commission in the sum of $570, plus an attorney fee of $150.[1] The trial court also dismissed defendant's cross claim on plaintiff's motion, without hearing any testimony on that claim.

In analyzing the findings of fact, it is obvious that the trial court allowed the commission on the grounds that plaintiff had produced a ready, willing and able purchaser and consequently, implicitly the listing agreement could not have been revoked. However, the trial court made no specific finding on this disputed issue of fact as to whether or not the agency agreement was revoked by defendant's telephone call. As will later appear, we do not consider this a fatal defect in the findings of fact unless the contract was, as defendant urges, a unilateral contract.

Defendant asks us to construe the exclusive listing agreement as a unilateral promise by defendant to pay a commission when and if plaintiff found a buyer, and under such a contract plaintiff could revoke such authority without any liability for a commission at any time, until the buyer was produced.

 Plaintiff, on the other hand, urges that a binding, bilateral agreement was made at the time the exclusive listing agreement was executed. Under this theory, consideration would run to the defendant prior to the time a buyer was produced, in the nature of plaintiff's attempts and efforts to find a buyer. Consequently, plaintiff is entitled to a real estate commission, under the express terms of

---

[1] Attorney's fees were allowable under the listing agreement in the event an action were necessary to enforce payment of the commission.

the italicized portion of the listing agreement, even though the defendant may have revoked the authority to sell.

It is our view that the plaintiff's analysis is correct. Although the listing agreement does not specifically require plaintiff to search for a buyer, such a duty has been imposed by law. It is axiomatic that the listing broker must exercise the utmost good faith and fidelity toward the seller (*Frisell v. Newman,* 71 Wn.2d 520, 429 P.2d 864 (1967)) and must make a bona fide, continuous effort to procure a purchaser. *Dixon v. Gustav,* 51 Wn.2d 378, 318 P.2d 965 (1957). Were the exclusive listing agreement purely unilateral, as defendant contends, there would be no obligation upon the real estate broker to make an effort to find a purchaser, since there would be no consummation of the agreement under that theory until he had produced one and no action against him for failing to try. (For a discussion of this problem, *see* 1 A. Corbin, Contracts § 50, 194 (1963).)

It is not claimed, and we cannot conclude that plaintiff failed to make a bona fide and continuous effort to procure a purchaser. It is undisputed that plaintiff advertised the property approximately 17 times in a local newspaper and showed the property to six or seven prospective purchasers. Thus, we conclude that the trial court properly found the defendant liable for a broker's commission under the listing agreement, whether or not the authority to sell was, in fact, revoked.[2]

█ We think the trial court was also correct in dismissing defendant's cross claim on the grounds that the facts thereon alleged were insufficient as a matter of law to sustain defendant's cause of action. *See* CR 12(b)(6). Using available legal remedies to collect an indebtedness does not give rise to a cause of action for mental anguish or

---

[2]It cannot be doubted that defendant had the power to revoke the exclusive agency at any time. There clearly was not an agency coupled with an interest. However, such revocation would give rise to an action for breach of contract.

harassment. *See Lewis v. Physicians & Dentists Credit Bureau, Inc.,* 27 Wn.2d 267, 177 P.2d 896 (1947).

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied March 30, 1972.

Review denied by Supreme Court April 24, 1972.