[No. 3457–II.   Division Two.   December 31, 1979.]

CURTIS MORRIS JACKSON, *Respondent,* v. PEOPLES FEDERAL CREDIT UNION, *Appellant.*

*Joe Gordon, Jr., Gerald A. Matosich,* and *Richard J. Jensen,* for appellant.

*Gerald Casey,* for respondent.

PEARSON, C.J.—This appeal involves the question of whether an attempted repossession of an automobile by a creditor constituted the tort of outrage. Plaintiff Jackson obtained a judgment for outrageous conduct based on the attempt of Peoples Federal Credit Union to repossess his 1977 Ford Thunderbird. The credit union contends that there was insufficient evidence of outrageous conduct and the court erred in denying its motion to dismiss. We reverse, finding as a matter of law that outrageous conduct was not established by the attempted repossession.

It is axiomatic that when ruling on a motion for dismissal at the conclusion of plaintiff's evidence, the court is required to consider all facts and inferences therefrom in a light most favorable to plaintiff. It is only where the evidence is such that reasonable minds cannot differ that the

trial court is justified in granting defendant's motion to dismiss. We thus state the facts in such a light.

Jackson purchased the Thunderbird through Peoples Federal in December of 1976, and loan payments were due on the twenty–second of each month. He made the February payment 2 days late and did not make the March payment until the first of April. In April, Jackson decided to trade in the car and purchase another, but he was unable to obtain from Peoples Federal the figure necessary to pay off the loan. His attorney wrote the credit union on April 29 demanding the payoff figure and stating that no further payments would be made until it was provided. The credit union manager testified that he gave the payoff figure to another finance company over the telephone on April 26. On April 30, Peoples Federal wrote Jackson demanding payment of the full loan amount. A check for the April payment received by the credit union on May 17 was ultimately dishonored by the bank, but only after the credit union decided to repossess. The credit union's president testified that the decision to repossess was motivated at least in part by the letter from Jackson's attorney. The May payment fell due on May 22, a Sunday, and the attempted repossession took place the next day.

Two women employees from Peoples Federal used their car to block the Thunderbird in its parking place at the defendant's place of employment, the Olalla School. Before the tow truck arrived, Jackson came out of the school and attempted to leave in his car on a work errand. He became very agitated during the 1–hour confrontation, and testified that the women made disparaging remarks to him, including a threat to have him arrested. At one point, Jackson removed a tire iron from his vehicle, and the women testified that he struck their car with the iron. When the tow truck arrived, the women backed their car away and Jackson was able to drive out. Jackson is a diabetic, and the credit union had notice of his condition, as he had been

rejected for disability insurance on the car loan. Immediately after the incident, Jackson saw his doctor, who verified that the episode at least temporarily aggravated Jackson's diabetes. The trial court refused to dismiss the plaintiff's claim for outrageous conduct, and the jury subsequently returned a $3,000 verdict.

We note initially that although our Supreme Court has adopted the tort of outrage and the theory of Restatement (Second) of Torts § 46(1) and (2) (1965); *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291 (1975); *Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 565 P.2d 1173 (1977), the theory has not yet been considered in Washington in the creditor–debtor context. Nor has our Supreme Court to this time furnished any guidelines for determining when certain conduct rises to a sufficient level to establish a factual question for the jury.[1] However, implicit in both *Grimsby* and *Contreras* is the understanding that the trial court must make an initial determination as to whether the conduct may reasonably be regarded as so "extreme and outrageous" as to warrant a factual determination by the jury. Restatement (Second) of Torts § 46, comment *h.*

This requirement that the court should make an initial determination of the sufficiency of plaintiff's case is particularly important in the creditor–debtor situation. Here the parties have contracted with reference to a repossession remedy. Such a remedy is legislatively sanctioned. *See* RCW 62A.9–503. Any attempt to exercise the remedy has a potential for causing emotional distress to the debtor. We agree with the statement of the Kansas Supreme Court in *Dawson v. Assocs. Fin. Servs. Co.,* 215 Kan. 814, 529 P.2d 104 (1974), at 821:

> In this area of the developing law, the business community must be given some latitude to pursue reasonable methods of collecting debts even though such methods

---

[1]We note that *Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 565 P.2d 1173 (1977) dealt with the sufficiency of allegations in the complaint to support the theory.

often might result in some inconvenience or embarrassment to the debtor. . . . Debtors cannot object to some inconvenience in connection with their creditor's efforts to collect a debt.

This policy consideration was recognized in Washington prior to *Grimsby* and *Contreras*. In *Lewis v. Physicians & Dentists Credit Bureau, Inc.*, 27 Wn.2d 267, 177 P.2d 896 (1947), the Supreme Court affirmed the denial of a "right of privacy" suit against a creditor's debt collection efforts unless such efforts created publicity which was "undue" or "oppressive." This court likewise in *McMenamin v. Bishop,* 6 Wn. App. 455, 493 P.2d 1016 (1972) held that the use of available legal remedies to collect an indebtedness does not give rise to a cause of action for mental anguish or harassment.

In neither of those cases was Restatement (Second) of Torts § 46 at issue. However, both cases dealt with an asserted right to privacy. Protection against unreasonable invasion of privacy is also the main consideration where the tort of outrage is asserted against a creditor for his debt collection activities. *See Dawson v. Assocs. Fin. Servs. Co., supra.* Both *Lewis* and *McMenamin* recognize the necessity to allow the business community reasonable latitude to pursue remedies so long as the means employed are not excessive or oppressive. *See Fite v. Lee,* 11 Wn. App. 21, 521 P.2d 964 (1974). The same policy considerations apply where we are asked to extend the tort of outrage to creditor–debtor collection efforts. We must be certain that the outrage theory will not emasculate legitimate creditor remedies on the one hand, or open the floodgates of litigation on the other.

It is essential in this setting that some guidelines be fixed. In those states which have directly addressed the question, the interests of the creditor in collecting his debt are balanced against the degree of invasion of the debtor's privacy, *Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So. 2d 321 (1961); *Dawson v. Assocs. Fin. Servs. Co., supra,* and a "rule of reason" is applied. *Housh v. Peth,* 99 Ohio

App. 485, 135 N.E.2d 440 (1955), *aff'd,* 165 Ohio St. 35, 133 N.E.2d 340 (1956).

This appears to be a sensible approach if such analysis is coupled with a strict adherence to the Restatement (Second) of Torts § 46 requirement that the conduct must be *extreme* and *outrageous* or such as to *recklessly* cause *severe* emotional distress. In this regard, the extensive comments and illustrations to section 46 are helpful in delineating the conduct which gives rise to this cause of action.

Illustration 7 of comment *e,* Restatement (Second) of Torts § 46 probably illustrates best the type of conduct those adjectives are designed to encompass in the creditor–debtor context.

> 7. A, a creditor, seeking to collect a debt from B, sends B a series of letters in lurid envelopes bearing a picture of lightning about to strike, in which A repeatedly threatens suit without bringing it, reviles B as a deadbeat, a dishonest man, and a criminal, and threatens to garnish his wages, to bother his employer so much that B will be discharged, and to "tie B up tight as a drum" if he does not pay. B suffers severe emotional distress. A is subject to liability to B.

We believe the factors to be considered in determining whether a case of this kind should go to the jury are:

1. Is the creditor legally entitled to pursue the remedy involved, either as a matter of statutory or contract right? *See* Restatement (Second) of Torts § 46, comment *g.*

2. In the pursuit of the lawful remedy, did the creditor use measures which were *clearly* and *obviously* excessive? For example, if the self–help remedy used by the creditor involves a clear breach of the peace or is otherwise unlawful, the activities should be sufficient to submit the issue to the jury, unless the breach of the peace is caused by the debtor's unreasonable response to otherwise reasonable collection activities. *See* Restatement (Second) of Torts § 46, comment *d.*

3. The degree of invasion of the debtor's right to privacy is an important consideration. Continued harassment of the

debtor with widespread communication of his "deadbeat" status to the employer or others should be considered as a serious invasion of defendant's right of privacy. Such conduct would qualify as "reckless." Restatement (Second) of Torts § 46, comment *e*, illustration 7.

4. The degree of emotional distress caused by the creditor to the debtor must be severe in any event, as opposed to constituting mere annoyance, inconvenience, or the embarrassment which normally occurs in a confrontation between creditor and debtor. Restatement (Second) of Torts § 46, comment *j*.

5. If the gravamen of the action is the alleged reckless or intentional infliction of emotional distress, the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in conscious disregard of it. *Public Fin. Corp. v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765 (1976). Restatement (Second) of Torts § 46, comment *i*.

Necessarily, a case–by–case analysis will be required, since the relationship of the parties and their knowledge of each other's sensibilities may affect the ultimate determination. *See Contreras v. Crown Zellerbach Corp., supra.*

Applying these guidelines to the case at bench, we start with the question of the legality of the creditor's use of the repossession remedy. The security agreement of the parties provided that if the credit union deemed itself insecure for any reason, the entire amount of the debt would become "immediately due and payable." An agreement may lawfully provide for accelerated payment when a lender deems himself insecure, but this is "construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired." RCW 62A.1–208. The statute defines good faith as "honesty in fact in the conduct or transaction concerned." RCW 62A.1–201(19).

Even if we view the evidence most favorably to the plaintiff, the credit union, in good faith, could assume that the prospect of payment was impaired. Both the February

and March payments were late, and the April payment was not made until May 17. The attorney's letter to the credit union on April 29 can be construed as an anticipatory breach of the contract. Thus we believe the credit union had reasonable grounds to repossess the Thunderbird when its demand for accelerated payment was refused. We therefore view the credit union's conduct in light of a proper exercise of its contract right of repossession.

■ A repossession is lawful where there is a contractual right to repossess and it is accomplished without disturbing the peace. *Burgin v. Universal Credit Co.*, 2 Wn.2d 364, 373, 98 P.2d 291 (1940). *Burgin* approved an instruction stating that:

> [I]f the buyer is in personal possession of the automobile and protests against such repossession and attempts to obstruct the seller in doing so, then under such circumstances, it becomes the duty of the seller to proceed no further in such attempted repossession and to resort to legal process to enforce his right of repossession given him by the contract.

Under this statement of the law, the credit union employees should have withdrawn earlier to avoid disturbing the peace. However, all they did was passively block the Thunderbird so that it could not be moved for a short period of time, and the breach of peace, if any, was minor in degree and precipitated largely by plaintiff's response to the otherwise peaceful attempt to repossess. Restatement (Second) of Torts § 46, comment *g*, states that one is not liable for knowingly causing emotional distress where all he does is to insist on his legal rights in a permissible way. While the conduct of the credit union employees may not have been entirely "permissible," it certainly did not rise to the level of *clearly* and *obviously* excessive. Further, this case does not involve the repeated and extreme harassment which other states have found necessary to establish the tort of outrage in collection cases. *See Public Fin. Corp. v. Davis, supra.* Restatement (Second) of Torts § 46, comment *e*, illustration 7.

In allowing the case to go to the jury, the trial court felt the parameters of the tort of outrage in Washington were broadened by the Restatement language quoted in *Contreras v. Crown Zellerbach Corp., supra,* at 740:

> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim "Outrageous!"

*Browning v. Slenderella Sys.,* 54 Wn.2d 440, 448, 341 P.2d 859 (1959). We do not believe *Contreras* intended to broaden the *Grimsby* rule that requires *"extreme"* and *"outrageous"* conduct. Both of the quoted statements are contained in the same paragraph of the Restatement comments, and are intended to describe the same test. Restatement (Second) of Torts § 46, comment *d.*

Finally, we consider whether the credit union's conduct was outrageous because it "recklessly or intentionally" inflicted severe emotional distress upon plaintiff.

Restatement (Second) of Torts § 46, comment *f* provides that the actor's conduct may be outrageous because he is aware of the other person's susceptibility to emotional distress due to a physical or mental condition. Here again the outrage must be "major," and depends upon the actor's knowledge that the other is peculiarly susceptible to emotional distress, and that it is highly probable the conduct will cause severe distress. *Public Fin. Corp. v. Davis, supra.*

Although the credit union had some notice of Jackson's diabetic condition, this knowledge did not equal that required by comment *f.* Furthermore the conduct of the credit union does not equate with the factual situations where Washington courts have determined the sufficiency issue. In *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291 (1975) the husband was unable to get hospital personnel to come to the aid of his wife, and he witnessed her death. In *Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 565 P.2d 1173 (1977) the complaint alleged that racial slurs and knowingly wrongful accusations and intimidations by an employer prevented the plaintiff and his family from living

90

and working in the community. *See also Bowe v. Eaton,* 17 Wn. App. 840, 565 P.2d 826 (1977) and *Marsh v. General Adjustment Bureau, Inc.,* 22 Wn. App. 933, 592 P.2d 676 (1979). In both cases the tort of outrage remedy was denied against insurance companies for allegedly engaging in sharp practices.

We hold that plaintiff failed as a matter of law to establish the tort of outrage, and the court erred in denying appellant's motion to dismiss.

Reversed.

REED and SOULE, JJ., concur.

Reconsideration denied January 31, 1980.