No. 80-250

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

ASSOCIATED AGENCY OF BOZEMAN, INC.,
a Mont. Corp.,

        Plaintiff and Respondent,

    -vs-

ELVAN L. PASHA AND NANCY L. PASHA,

        Defendants and Appellants.

---

Appeal from:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Larry W. Moran, Bozeman, Montana

    For Respondent:

        William L. Pepper, Bozeman, Montana

---

Submitted on Briefs:  December 17, 1980

Decided: MAR 4 - 1981

Filed: MAR 4 - 1981

_____Thomas J. Kearney_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Associated Agency of Bozeman, Inc., a real estate brokerage firm and respondent herein, brought an action in the Gallatin County District Court to recover a real estate sales commission. Appellants, Elvan and Nancy Pasha, denied that Associated Agency had complied with the terms of its exclusive listing agreement and asserted that they were justified in terminating the contract. Following trial, the court refused to enter a directed verdict in appellants' favor. The jury then returned a verdict and judgment in favor of respondent.

Elvan and Nancy Pasha were the owners of a farm located near Bozeman, Montana. For the purpose of selling this property, they entered into a standard real estate broker's employment contract, dated May 27, 1977, employing Associated Agency as their agent. The contract gave Associated Agency a three-month exclusive listing and provided that the Pashas would pay a 6 percent commission if Associated should find a buyer "ready, willing and able to enter into a deal for said price and terms." The listing price was $450,000, with terms "to be arranged--prefer exchange for cattle ranch." The Pashas also agreed to pay the commission if the ranch was sold within 180 days of the August 27, 1977, expiration date.

During the period the listing was agreement was in effect, Associated Agency, through its broker/agent Randy White, produced two separate buyers willing to purchase the property for the full purchase price. The Pashas rejected the offers, however, indicating they would "prefer" an exchange of property and not a cash purchase. After the

-2-

first listing agreement expired, the parties signed another employment contract. The contract extended Associated Agency's exclusive listing to December 27, 1977, and was identical in terms to the first agreement.

In August 1977 a ranch for sale was located for which the Pashas were interested in trading. This property was owned collectively by David R. Matti, Margaret Matti, David F. Matti and Judy L. Matti. The Pashas proposed that the purchasers found by Associated, who wished to buy the Pasha property, purchase instead the Matti property and then exchange it for the Pasha property. The Mattis, Pashas, Randy White and the proposed purchasers, H. B. Landoe and F. Delbrook Lichtenberg, met and discussed the possibility of effectuating an exchange. Subsequent to this meeting, Lichtenberg and Landoe made two offers to purchase the Pasha property for the full purchase price, subject to completing the Matti exchange. Neither the Mattis nor the Pashas, however, signed the earnest money receipt and agreement to sell and purchase necessary to complete the sale.

On or about November 16, 1977, in Helena, Montana, another meeting was held to work out the details of a possible exchange of the Pasha and Matti properties. Present at this meeting were David F. Matti, Judy Matti, Landoe, Lichtenberg, and Joe Gray, who had joined Landoe and Lichtenberg as interested purchasers of the Pasha property. At the conclusion of the meeting, the Pashas produced a proposal prepared by their attorney outlining the terms and conditions of an exchange that would be agreeable to them.

The Pasha proposal was set up in various stages and provided the following:

(1) Matti will divide his property into Tracts A and B.

(2) Matti will then convey both tracts to Landoe and Lichtenberg (L & L), who will execute a $180,000 mortgage on Tract A and a $320,000 mortgage on Tract B.

(3) L & L will then convey Tract A to Pasha who will assume payment of the $180,000 mortgage. In addition, L & L will convey Tract B to Pasha free and clear in exchange for the entire Pasha property which is subject to a $130,000 Federal Land Bank mortgage to be assumed by L & L.

(4) Matti will then agree to release L & L from the $180,000 mortgage on Tract A which was assumed by Pasha and to accept as substitute security on the $320,000 mortgage on Tract B the entire Pasha property received by L & L.

Landoe and Lichtenberg testified that all parties were in agreement that the exchange would take place on the terms and conditions outlined in the Pasha proposal. Pashas' attorney was to prepare the appropriate documentation with the closing date set for November 28, 1977. Matti and Pasha testified, however, that no final decision was reached on how the exchange would actually take place.

On December 3, 1977, the parties had yet to effectuate an exchange of property. The Pashas on this date sent a letter to Randy White and Associated Agency informing them that the exclusive listing agreement between the two parties was terminated. As a basis for the termination, the Pashas stated in the letter that White had neglected to fulfill his obligations under the agreement.

On December 15, 1977, the Pashas, David F. Matti and

Joe Gray met in the office of Pashas' attorney. White attempted to attend this meeting on behalf of Associated Agency but was excluded by the Pashas. Elvan Pasha testified that during the meeting, Matti stated he would not convey Tract B free and clear as provided in the Pasha proposal (i.e., would not accept as substitute security for the $320,000 mortgage on Tract B the entire Pasha property received by Landoe, Lichtenberg and Gray). The Pashas apparently wanted this property without encumbrances because they planned to use it as security for a loan to obtain operation capital.

Being unable to obtain the property free and clear, the Pashas stated they would still consummate the exchange transaction if they received an additional $50,000 from Landoe, Lichtenberg and Gray. Gray testified that the Pashas only wanted an extra $50,000 and that the rest of the terms of the proposal would remain intact. Matti merely testified that the parties were unable to agree on a means to accomplish the trade or sale so they decided not to pursue further negotiations.

Associated Agency brought suit in February 1978 praying for a 6 percent commission ($27,000), costs and attorney fees. It alleged in its complaint that it had fully performed under the listing agreement by finding a buyer ready, willing and able to purchase or exchange the Pasha property and that the Pashas had wrongfully terminated the contract. The Pashas answered and denied that Associated had complied with the terms of the agreement and further contended that they were justified in terminating the contract.

Subsequent to the filing of their answer, the Pashas, on May 8, 1978, sold a portion of their property to Robert and Nancy Steinman. The remainder of the property was purchased by Big West Land Company, Inc., a corporation owned and controlled by Robert Steinman. Steinman had earlier expressed an interest in the property after it was shown to him by Randy White. Immediately after selling their property the Pashas, on the same date, purchased the Matti property.

Associated Agency's suit proceeded to trial. Following trial the case was submitted to the jury. The jury, after deliberation, returned a verdict in favor of Associated, awarding it a commission of $27,000. The Pashas now appeal.

The following issues have been presented for our review:

1. Whether the statute of frauds has been satisfied so as to preclude a directed verdict in favor of appellants?

2. Whether the District Court erred in failing to submit to the jury appellants' proposed instruction nos. 3, 4, 16, 17 and 18?

3. Whether there is substantial evidence to support a verdict in favor of respondent?

As to the first issue, appellants at trial and on this appeal make much ado over the fact that they never signed a binding written real estate contract. Based upon this fact, they assert that the requirements of the statute of frauds have not been complied with, and respondent, as a real estate broker, is not entitled to a commission as a matter of law. We must disagree.

The contract at issue in respondent's action is a real estate broker's employment contract or "listing agreement"--not an alleged unsigned oral real estate contract for deed. This listing agreement was in writing and signed by appellants as the party charged. All statutory requirements concerning the validity of this contract were fulfilled, and the statute of frauds has been complied with. See section 28-2-903(1)(e), MCA; Carnell v. Watson (1978), 176 Mont. 344, 578 P.2d 308.

Appellants contend that the District Court also erred in failing to submit to the jury their proposed instruction nos. 3, 4, 16, 17 and 18.

It is not reversible error for a trial court to refuse an offered instruction unless such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing him. Payne v. Sorenson (1979), _____ Mont. _____, 599 P.2d 362, 36 St.Rep. 1610.

A party is not prejudiced by a refusal of his proposed instructions where the subject matter of the instruction is not applicable to the pleadings and facts, or not supported by the evidence introduced at trial, or the subject matter is adequately covered by other instructions submitted to the jury. Payne v. Sorenson, supra; Brown v. North Am. Mfg. Co. (1978), 176 Mont. 98, 576 P.2d 711; Butler Manufacturing Co. v. J & L Implement Co. (1976), 167 Mont. 519, 540 P.2d 962.

Appellants' proposed instruction no. 3 sets forth the requirement that a copy of a real estate broker's employment contract must be provided to the landowner at the time of its execution.

The instruction provides a true indication of the law in Montana. The subject matter, however, was never raised in the pleadings nor has it ever constituted a legitimate theory of appellants' case. Appellants admit to entering into and signing the employment contract. In signing the contract appellants certified that they received a copy of the agreement. Randy White testified at trial that appellants were in fact given a copy; Elvan Pasha testified he merely could not recall receiving a copy and possibly could have lost it. We find no reversible error in the court's refusal of proposed instruction no. 3.

Appellants' proposed instruction no. 4 sets forth the statute of fraud requirements concerning the sale of real property. The contract at issue in this suit, however, is the real estate broker's employment contract, not a contract for deed. There was never any dispute over the validity of any contract for the sale of real property in that both parties agree no sale was made until the property was purchased by Robert Steinman on May 8, 1978. The instruction, consequently, was unnecessary, and its refusal has not prejudiced appellants so as to require reversal.

Appellants' proposed instruction nos. 16, 17 and 18 deal with conditions to be met under the employment contract before there could be any obligation of appellants for a commission. These instructions indicate, however, that a real estate broker is never entitled to a commission until a binding written agreement is signed and the actual sale of real property is completed. Such an instruction is misleading and ignores the fact that a sale may not have been consummated due to the fault of the seller.

We acknowledge that this Court has stated that a broker employed to "sell or effect a sale" and exchange (as is the case here) does not earn his commission until the purchase price is paid, title is conveyed and the sale is completed. See Diehl and Associates, Inc. v. Houtchens (1977), 173 Mont. 372, 567 P.2d 930. In an expansion of this holding, however, we must also conclude that a broker is still entitled to his commission even if the sale is not completed if a ready, willing and able buyer is procured and the failure to consummate was solely due to the wrongful acts or interference of the seller. See Taylor v. Gaudy (1980), 46 Or.App. 235, 611 P.2d 336; Fender v. Brunken (Colo.App. 1975), 534 P.2d 347; Red Carpet Real Estate of Aloha, Inc. v. Huygens (1974), 270 Or. 860, 530 P.2d 46; see also Ellsworth Dobbs, Inc. v. Johnson (1967), 50 N.J. 528, 236 A.2d 843. The District Court instructed the jury in this regard, and we find no reversible error in refusing appellants' tendered instructions.

In regard to the final issue on appeal, the grounds upon which a recovery for respondent could have based are twofold: (1) a wrongful termination of the listing agreement by appellants prior to its expiration date; and (2) a wrongful refusal by appellants to close a buy/sell transaction after respondent produced a buyer ready, willing and able to purchase appellants' property on the terms and conditions in the listing agreement. In resolving this issue, however, we need only discuss appellants' wrongful termination.

As to the allegation of liability based upon a wrongful termination, the parties' agreement provides in

pertinent part:

> "'THIS IS AN EXCLUSIVE LISTING' and you [respondent] are hereby granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me [appellants] or any other person, or of exchange or conveyance, of said property, or any part thereof, during the term of your exclusive employment, <u>or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you said commission just the same as if a sale had actually been consummated by you</u>." (Emphasis added.)

It is the employment contract which governs a real estate broker's compensation, and parties to such an agreement can make that compensation depend upon any lawful condition. Blank v. Borden (1974), 11 Cal.3d 963, 115 Cal.Rptr. 31, 524 P.2d 127. Here, the parties entered into an exclusive listing agreement whereby compensation can be paid upon appellants' unilateral termination. Such a "commission on withdrawal" has been deemed valid (if the withdrawal is not justified), and since the parties have agreed to the provision, it is incumbent upon the courts to enforce it. <u>Blank</u>, supra; see also, McMenamin v. Bishop (1972), 6 Wash.App. 455, 493 P.2d 1016; Central Idaho Agency, Inc. v. Turner (1968), 92 Idaho 306, 442 P.2d 442.

Appellants assert that the termination was justified due to the broker's failure to fulfill his duties and responsibilities under the contract. In particular, appellants assert that respondent failed to work on sale and/or trade negotiations on their behalf; failed to advise them of important matters respecting their property; and failed to advise them of scheduled meetings.

In reviewing the evidence offered in this matter, it is our function to determine whether there is any

substantial credible evidence to support the verdict and judgment when viewed in a light most favorable to the prevailing party. Here, there is conflicting evidence as to respondent's efforts in obtaining a ready, willing and able buyer. However, the record is still replete with substantial evidence necessary to support a finding by the jury that respondent acted in furtherance of its responsibilities under the contract and that appellants improperly terminated the listing agreement.

The record reveals that Randy White made numerous phone calls, placed advertisements, showed the property to prospective buyers (including the party who eventually purchased the property) and helped in finding the group interested in working an exchange. We agree that this exchange was never completed, but respondent was still involved in an attempt to consummate some sort of agreement. The record also reveals that respondent did not personally notify appellants of a meeting concerning the exchange, but this was only due to the fact that Randy White allowed the buyers' broker to so notify the Pashas. Appellants were thus informed of the meeting and were able to attend. Respondent also failed to attend the November 16, 1977, meeting in Helena, Montana, but this was only after being informed by appellants that White's presence was not necessary.

We cannot conclude that the evidence supporting a finding that appellants wrongfully terminated the contract was "so inherently impossible or improbable as not to be entitled to belief." Berdine v. Sanders County (1974), 164 Mont. 206, 209, 520 P.2d 650, 651. Consequently, in

accordance with the terms of the contract agreed to by the parties, we must conclude the jury was proper in awarding respondent its commission "as if a sale had been consummated."

The verdict and judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices