[No. 38189-0-I. Division One. September 22, 1997.]

JORDAN BROWER, *Appellant,* v. CHRIS ACKERLEY, ET
AL., *Respondents.*

*Roger M. Leed* of *University Place Law Offices*, for appellant.

*Peter D. Byrnes* and *Paul R. Taylor* of *Byrnes & Keller*, for respondents.

BECKER, J. — Jordan Brower, who alleges that Christopher and Theodore Ackerley made anonymous threatening telephone calls to him, appeals from a summary judgment dismissal of his claims against them. Because the threatened harm was insufficiently imminent to be actionable as civil assault, we hold the assault claim was appropriately dismissed. But we reverse and remand for trial on the tort of outrage, rejecting the argument that Brower's alleged emotional distress was not severe.

## FACTS

In deciding whether Brower has properly been denied the right to take his case to trial, we do not evaluate the credibility of the witnesses, nor do we decide whether Brower's allegations are true. Instead the question is whether the applicable law would permit a reasonable jury to find in his favor. Because we decide only legal issues and not factual ones, we make our determination de novo, according no particular deference to the decision of the trial court.[1] We describe the evidence in the record, and the reasonable inferences therefrom, in a light most favorable to plaintiff Brower as the nonmoving party in the summary judgment proceeding.[2]

The plaintiff, Jordan Brower, is a Seattle resident active in civic affairs. Christopher and Theodore Ackerley, in their early twenties at the time of the alleged telephone

---

[1] *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996).

[2] *Marquis*, 130 Wn.2d at 105.

calls, are two sons of the founder of Ackerley Communications, Inc., a company engaged in various activities in Seattle including billboard advertising. Brower perceived billboard advertising as a visual blight. Based on his own investigation, he concluded that Ackerley Communications had erected numerous billboards without obtaining permits from the City of Seattle; had not given the City an accurate accounting of its billboards; and was maintaining a number of billboards that were not on the tax rolls. In January, 1991, Brower presented his findings to the City. When the City did not respond, Brower filed suit in October of 1991 against the City and Ackerley Communications seeking enforcement of the City's billboard regulations.

Within two days an anonymous male caller began what Brower describes as "a campaign of harassing telephone calls" to Brower's home that continued over a period of 20 months. The first time, the caller shouted at Brower in an aggressive, meanspirited voice to "get a life" and other words to that effect. Brower received at least one more harassing telephone call by January of 1992.

When the City agreed to pursue Brower's complaints about the billboard violations, Brower dropped his suit. In April of 1992, the City made a public announcement to the effect that Ackerley Communications had erected dozens of illegal billboards. Within a day of that announcement, Brower received an angry telephone call from a caller he identified as the same caller as the first call. In a loud, menacing voice, the caller told Brower that he should find a better way to spend his time. Two days later there was another call telling Brower to "give it up."

In July of 1992, shortly after the City Council passed a moratorium on billboard activity, Brower received another angry anonymous call. The male voice swore at him and said, "You think you're pretty smart, don't you?" Brower says he seriously wondered whether he was in any danger of physical harm from the caller. Over the following months Brower continued to receive calls from an

unidentified male who he says "belittled me, told me what a rotten person I was, and who used offensive profanity."

On July 19, 1993, the City Council passed a new billboard ordinance. At about 6:30 that evening an angry-voiced man telephoned Brower and said "dick" in a loud voice and hung up. At about 7:30 p.m. the same caller called and said, "I'm going to find out where you live and I'm going to kick your ass." At 9:43 p.m. Brower received another call from a voice disguised to sound, in Brower's words, "eerie and sinister." The caller said "Ooooo, Jordan, oooo, you're finished; cut you in your sleep, you sack of shit." Brower recorded the last two calls on his telephone answering machine.

Brower made a complaint to the police, reporting that he was very frightened by these calls. Because Brower had activated a call trapping feature of his telephone service after the third telephone call, the police were able to learn that the call had originated in the residence of Christopher Ackerley. When contacted by the police, Christopher Ackerley denied making the calls. He said Brower's telephone number was in his apartment, and that his brother Ted Ackerley had been in the apartment at the time and perhaps had made the calls.

The City filed no criminal charges based on the police report. Brower then brought this civil suit against Christopher and Theodore Ackerley seeking compensation for the emotional distress he suffered as the result of the telephone calls. According to Brower, he interpreted the calls of July 19 as a death threat, and felt "hunted down." He experienced feelings of panic, terror, and insecurity as well as a rising pulse, light-headedness, sweaty palms, sleeplessness, and an inability to concentrate that lasted for some time afterward: "Every day I come home, I worry that someone has burned our house down, or if my wife is late from work, whether she has been harmed."

The Ackerleys moved for summary judgment. Brower responded primarily with his own declaration describing the telephone calls and his reaction to them. The trial

court dismissed all claims. Brower appeals, arguing that his declaration raises a genuine issue of material fact as to his claims of assault, negligence, and the tort of outrage. The Ackerleys respond that the telephone calls described by Brower do not amount to civil assault, and that the distress Brower claims he suffered as a result was insufficiently severe to support his other causes of action.

Damages for mental and emotional distress are generally available merely upon proof of an intentional tort such as assault.[3] In such cases, there is no requirement that emotional distress be severe or manifested by physical symptoms in order to be compensable as an element of damages.[4] Therefore, we initially examine Brower's proof to determine whether he has presented proof of an intentional tort.

## ASSAULT

The elements of civil assault have not been frequently addressed in Washington cases. The gist of the cause of action is "the victim's apprehension of imminent physical violence caused by the perpetrator's action or threat."[5] In the 1910 case of *Howell v. Winters*,[6] the Supreme Court relied on a definition provided in COOLEY, TORTS (3d ed.):

> An assault is an attempt, with unlawful force, to inflict bodily injuries upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented. Such would be the raising of the hand in anger, with an apparent purpose to strike, and sufficiently near to enable the purpose to be carried into effect; the pointing of a loaded pistol at one who is in its range; the pointing of a pistol not loaded at one who is not aware of that fact and making an

---

[3]*Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986); *Hunsley v. Giard*, 87 Wn.2d 424, 431, 553 P.2d 1096 (1976).

[4]*See Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 482-85, 805 P.2d 800 (1991).

[5]*St. Michelle v. Robinson*, 52 Wn. App. 309, 313, 759 P.2d 467 (1988).

[6]*Howell v. Winters*, 58 Wash. 436, 437-38, 108 P. 1077 (1910).

apparent attempt to shoot; shaking a whip or the fist in a man's face in anger; riding or running after him in threatening and hostile manner with a club or other weapon; and the like. The right that is invaded here indicates the nature of the wrong. Every person has a right to complete and perfect immunity from hostile assaults that threaten danger to his person; 'A right to live in society without being put in fear of personal harm.'[7]

The discussion in *Howell* accords with the RESTATEMENT (SECOND) OF TORTS, which defines assault, in relevant part, as follows:

(1) An actor is subject to liability to another for assault if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) the other is thereby put in such imminent apprehension.[8]

■ According to section 31 of the RESTATEMENT, words alone are not enough to make an actor liable for assault "unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person."[9] The comments to section 31 indicate infliction of emotional distress is a better-suited cause of action when mere words cause injury, "even though the mental discomfort caused by a threat of serious future harm on the part of one who has the apparent intention and ability to carry out his threat may be far more emotionally disturbing than many of the attempts to inflict minor bodily contacts which are actionable as assaults."[10]

The Ackerleys argue that dismissal of Brower's assault

---

[7]*Howell*, 58 Wash. at 438 (quoting 1 THOMAS M. COOLEY, LAW OF TORTS (John Lewis ed., 3d ed. 1906) 278).

[8]RESTATEMENT (SECOND) OF TORTS § 21 (1965).

[9]RESTATEMENT (SECOND) OF TORTS § 31.

[10]RESTATEMENT (SECOND) OF TORTS § 31 cmt. a.

claim was appropriate because the threatening words were unaccompanied by any physical acts or movements. Brower acknowledges that words alone cannot constitute an assault, but he contends the spoken threats became assaultive in view of the surrounding circumstances including the fact that the calls were made to his home, at night, creating the impression that the caller was stalking him.

Whether the repeated use of a telephone to make anonymous threats constitutes acts or circumstances sufficient to render the threats assaultive is an issue we need not resolve because we find another issue dispositive: the physical harm threatened in the telephone calls to Brower was not imminent.

■ To constitute civil assault, the threat must be of imminent harm. As one commentator observes, it is "the immediate physical threat which is important, rather than the manner in which it is conveyed."[11] The RESTATEMENT's comment is to similar effect: "The apprehension created must be one of imminent contact, as distinguished from any contact in the future."[12] The RESTATEMENT gives the following illustration: "A threatens to shoot B and leaves the room with the express purpose of getting his revolver. A is not liable to B."[13]

The telephone calls received by Brower on July 19 contained two explicit threats: "I'm going to find out where you live and I'm going to kick your ass"; and later, "you're finished; cut you in your sleep." The words threatened action in the near future, but not the imminent future. The immediacy of the threats was not greater than in the Restatement's illustration where A must leave the room to get his revolver. Because the threats, however frightening, were not accompanied by circumstances indicating that the caller was in a position to reach Brower and

[11]W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 10, at 45 (5th ed. 1984) (footnote omitted).

[12]RESTATEMENT (SECOND) OF TORTS § 29 cmt. b.

[13]RESTATEMENT (SECOND) OF TORTS § 29 cmt. c, illus. 4.

inflict physical violence "almost at once,"[14] we affirm the dismissal of the assault claim.

## TELEPHONE HARASSMENT

In *Cagle v. Burns & Roe, Inc.*,[15] the Supreme Court allowed the plaintiff to pursue emotional distress damages because the suit alleged a wrongful termination of employment in violation of public policy which, the Court recognized, "can be accurately characterized as an intentional tort."[16] According to *Cagle*, "recovery of emotional distress damages has been allowed in conjunction with many intentional or willful acts which violated a clear mandate of public policy."[17] Relying on *Cagle*, Brower argues that even if the telephone calls do not amount to a civil assault, he has presented facts sufficient to show the defendants willfully violated the clear mandate of public policy manifested in a statute making telephone harassment at least a gross misdemeanor.[18]

In Brower's short presentation of this issue in his appel-

---

[14]RESTATEMENT (SECOND) OF TORTS § 29 cmt. b.

[15]*Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986).

[16]*Cagle*, 106 Wn.2d at 916.

[17]*Cagle*, 106 Wn.2d at 916.

[18]*See* RCW 9.61.230:

Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:

(1) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or

(2) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or

(3) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household; shall be guilty of a gross misdemeanor, except that the person is guilty of a class C felony if either of the following applies:

(a) That person has previously been convicted of any crime of harassment, as defined in RCW 9A.46.060, with the same victim or member of the victim's family or household or any person specifically named in a no-contact or no-harassment order in this or any other state; or

late brief we discern the outline of an argument that telephone harassment, as defined by the criminal statute, should be recognized in civil law as an intentional tort. If telephone harassment is an intentional tort, then under *Cagle* damages are awardable for emotional distress without any threshold requirement of severity or physical symptoms.

The problem is that Brower did not make this argument below. His trial court brief on summary judgment discussed the criminal statute only in connection with his theory of negligent infliction of emotional distress, a theory Brower acknowledged as requiring some manifestation of "objective symptomatology."[19] An issue not briefed or argued in the trial court will not be considered on appeal.[20] Whether criminal telephone harassment gives rise to an independent civil cause of action is an issue that must be left to another case.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

As explained in a comment to section 46 of the RESTATEMENT OF TORTS, the law's recognition of infliction of emotional distress as an independent basis of tort liability is relatively recent:

> [E]motional distress may be an element of damages in many cases where other interests have been invaded, and tort liability has arisen apart from the emotional distress. Because of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability, the law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone. It is only within recent years that the rule

---

(b) That person harasses another person under subsection (3) of this section by threatening to kill the person threatened or any other person.

[19]*See Hunsley v. Giard*, 87 Wn. 2d 424, 436, 553 P.2d 1096 (1976) (requiring objective symptomatology as element of negligent infliction of emotional distress).

[20]*State v. Riley*, 121 Wn.2d 22, 30, 846 P.2d 1365 (1993).

stated in this Section has been fully recognized as a separate and distinct basis of tort liability, without the presence of the elements necessary to any other tort, such as assault, battery, false imprisonment, trespass to land, or the like.[21]

A great deal of human conduct not otherwise tortious will cause emotional distress to other persons, sometimes by accident and sometimes by intention. When a plaintiff attempts to recover emotional distress damages in the absence of an independent basis of tort liability, there are special requirements with respect to damages. Requirements that the damage suffered be somehow extraordinary operates as a check against a flood of civil suits arising from nothing more than petty feuds and hurt feelings.[22]

One liability-limiting rule applied in this state, as a result of the Supreme Court's decision in *Hunsley v. Giard*, is that a plaintiff claiming negligent infliction of emotional distress must show the distress to be manifested by "objective symptomatology" — i.e., "physical symptoms evidencing and resulting from the emotional distress."[23] Following *Hunsley*, this court has consistently rejected

---

[21]RESTATEMENT (SECOND) OF TORTS § 46 cmt. b.

[22]*See Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S. Ct. 2396, 2411, 129 L. Ed. 2d 427 (1994). *See also Metro-N. Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 117 S. Ct. 2113, 138 L. Ed. 2d 560 (1997) (collecting common-law cases requiring proof of physical symptoms to recover for negligent infliction of emotional distress).

[23]*Hunsley v. Giard*, 87 Wn.2d 424, 433, 436, 553 P.2d 1096 (1976). The plaintiff, who had been sitting in her living room reading the paper, heard an explosive sound and, rushing toward it, discovered her next door neighbor had driven her Lincoln Continental into the middle of plaintiff's back porch utility room. Medical testimony established that the shock had caused the plaintiff to experience measurable heart stress. The Supreme Court, remanding for a new trial, held that the duty to avoid the negligent infliction of emotional distress was not conditioned by any necessity for a physical impact or threat of immediate physical invasion of the plaintiff's personal security. The cause of action was, however, limited by the ordinary concepts of negligence, including the element of foreseeability. As a further restriction, based on the facts of the case, the court imposed the requirement that the suffering be shown by objective symptoms. The court admitted this requirement was somewhat artificial. But although *Hunsley* held open the possibility that another case with different facts might open the door to liability for emotional distress unmanifested by any physical symptoms, the holding in *Hunsley* has not since been revised.

claims for negligent infliction of emotional distress in the absence of physical symptoms. In *Shoemaker v. St. Joseph Hospital and Health Care Center*,[24] the plaintiff's evidence showed that the plaintiff "suffered from sleep disturbances and nightmares, tearful outbursts, low energy level, and recurrent 'intrusive memories,'" but she was never under a doctor's care, and never received or requested medication; her social and occupational functioning remained unimpaired, and her psychologist did not consider her clinically depressed.[25] On those facts, this court held the plaintiff failed as a matter of law to establish the objective symptomatology required by *Hunsley*.[26]

Because Brower's distress in reaction to the telephone calls was substantially similar to the plaintiff's symptoms in *Shoemaker*, we affirm the dismissal of Brower's claim for negligent infliction of emotional distress.

## OUTRAGE

 The tort of intentional or reckless infliction of emotional distress, more commonly known as the tort of outrage, is another vehicle for the recovery of emotional distress damages in the absence of other tort remedies.[27] The Supreme Court has defined the elements of outrage as "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress."[28]

For purposes of summary judgment, the Ackerleys do not dispute the characterization of the telephone calls as outrageous conduct, and they accept that any distress

---

[24]*Shoemaker v. St. Joseph Hosp. & Health Care Ctr.*, 56 Wn. App. 575, 581, 784 P.2d 562 (1990).

[25]*Shoemaker*, 56 Wn. App. at 581.

[26]*Shoemaker*, 56 Wn. App. at 581.

[27]*See Rice v. Janovich*, 109 Wn.2d 48, 62, 742 P.2d 1230 (1987).

[28]*Rice*, 109 Wn.2d at 61; *accord Birklid v. Boeing Co.*, 127 Wn.2d 853, 867, 904 P.2d 278 (1995). The Supreme Court first recognized the tort of outrage in *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291 (1975), explicitly adopting the test found in the RESTATEMENT (SECOND) OF TORTS, section 46(1).

experienced by Brower was intentionally or recklessly inflicted. Their challenge is limited to the third element—whether the resulting emotional distress was "severe."[29]

Brower describes reacting with acute anxiety to the final telephone calls. After the second of three calls received on the same evening, he set his security system, checked the door and window locks, and gathered his wife and cats in an upstairs bedroom. He was nervous and was looking out the windows every few minutes. He and his wife thought someone might already be there. Then the third call came threatening to "finish" him and cut him in his sleep. After that he remained vigilant in looking out the windows and was unable to fall asleep until after 2 a.m. His pulse went up, he got sweaty palms, and felt light-headed. He worried that if he left his home somebody would burn it down or break in. He says he was "very agitated and upset for days." He was afraid to appear in public. Even after seeking a restraining order, he felt angry and humiliated and still feared that someone was going to harm him or his family. His sleeping patterns changed as his "mind was in such constant turmoil of fear and uncertainty that [he] was far too anxious to get to sleep at a reasonable hour." Also, he would wake up in the night worrying about the threats. He says he became less effective as an activist and worried that his work would encourage more threats. His ability to concentrate deteriorated and he was more fatigued.

The Ackerleys initially contend Brower's distress, as described, cannot be viewed as severe because it fails to identify "objective symptomatology." That requirement, however, belongs to the tort of negligent infliction of emotional distress. No Washington case has incorporated

---

[29]*See Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 805 P.2d 800 (1991) (collecting intentional torts cases allowing emotional distress damages and distinguishing these cases from the requirement of severe emotional distress necessary to prove liability for outrage).

it into the tort of outrage.[30] Similarly the RESTATEMENT has recognized that bodily harm is not necessary.[31]

■■■■■ Ackerleys next contend that Brower's alleged distress is too insignificant to satisfy the severity requirement. "Complete emotional tranquillity," as the RESTATEMENT observes, "is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people."[32] Brower's outrage claim was properly dismissed, according to the Ackerleys, because what he experienced was less severe than the distress described by the plaintiffs whose claims for outrage this court held properly dismissed in *Spurrell v. Block*[33] and *Lawson v. Boeing*.[34]

The parent-plaintiffs in *Spurrell* asserted outrage after authorities removed their children from the home without the parents' knowledge. This court first rejected the plaintiffs' characterization of the defendants' conduct as outrageous, and then also stated that plaintiffs' claim of "one sleepless night, tears, loss of appetite, and anxiety"

---

[30]*See Spurrell v. Block*, 40 Wn. App. 854, 863, 701 P.2d 529 (1985) (this court rejected the claim of negligent infliction of emotional distress with reference to the lack of physical symptoms and "fact of life" standards set forth in the negligence case of *Hunsley*, but, with regard to the outrage claim, merely held that the plaintiff failed to establish a genuine issue of material fact as to severe emotional distress, without further explanation).

[31]RESTATEMENT (SECOND) OF TORTS, section 46, comment k, provides:

Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. The rule stated is not, however, limited to cases where there has been bodily harm; and if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm. In such cases the courts may perhaps tend to look for more in the way of outrage as a guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required.

[32]RESTATEMENT (SECOND) OF TORTS § 46 cmt. j.

[33]*Spurrell v. Block*, 40 Wn. App. 854, 701 P.2d 529 (1985).

[34]*Lawson v. Boeing Co.*, 58 Wn. App. 261, 792 P.2d 545 (1990).

failed to establish severe emotional distress.[35] In *Lawson* the plaintiff, a Boeing employee, was demoted to a non-supervisory position after a company investigation into complaints about his behavior.[36] In connection with an outrage claim against Boeing and its employees, the plaintiff asserted he suffered depression, sleeplessness, increased headaches, loss of libido and energy and loss of appetite.[37] This court held he had satisfied neither the first element (outrageous conduct) nor the third element (severe emotional distress).[38] The court added that the symptoms alleged by Lawson "are not 'signs of distress above that level which is a fact of life' and do not constitute severe emotional distress."[39]

The conclusory analysis of the severity of the plaintiffs' distress in both *Lawson* and *Spurrell* did not create an inflexible rule precluding all claims for outrage where the distress alleged is not more severe than the distress described in those cases, especially since in both cases the dismissals were driven primarily by the plaintiffs' failure to establish outrageous conduct.[40] When the conduct offered to establish the tort's first element is not extreme, a court must withhold the case from a jury notwithstanding proof of intense emotional suffering. The situation is different when the alleged conduct sufficiently satisfies the first two elements, outrageous and extreme conduct, and intentional or reckless infliction of emotional harm. In such cases, we hold a case of outrage should ordinarily go to a jury so long as the court determines the plaintiff's alleged damages are more than "mere annoyance, inconve-

---

[35]*Spurrell*, 40 Wn. App. at 863.

[36]*Lawson*, 58 Wn. App. at 263.

[37]*Lawson*, 58 Wn. App. at 270.

[38]*Lawson*, 58 Wn. App. at 270.

[39]*Lawson*, 58 Wn. App. at 270 (quoting *Spurrell v. Block*, 40 Wn. App. at 863).

[40]Severity of distress is one of five factors encompassed within a court's initial determination that "the conduct has been sufficiently extreme and outrageous to result in liability." *Spurrell*, 40 Wn. App. at 862 (citing *Jackson v. Peoples Fed. Credit Union*, 25 Wn. App. 81, 604 P.2d 1025 (1979)).

nience, or normal embarrassment" that is an ordinary fact of life.[41]

Our holding is consistent not only with *Spurrell* and *Lawson*, but also with the RESTATEMENT. According to comment j in the RESTATEMENT, severe distress "must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."[42] In our view, this is such a case. Unlike the conduct considered in *Spurrell* and *Lawson*, the telephone harassment as alleged by Brower fits within the definition of a criminal statute, with no imaginable purpose except to cause emotional distress. For purposes of summary judgment, the Ackerleys do not dispute that a rational jury could conclude the entire episode was extreme and outrageous.[43] If a jury does eventually reach that conclusion, the extremity of the conduct is in itself important evidence of the severity of distress experienced by the target. Taking into consideration the threatening nature of the final calls, a jury could find from Brower's description of his acute and enduring anxiety that he experienced more emotional distress than a person should ordinarily be expected to put up with as "a part of the price of living among people."[44] We conclude Brower is entitled to take his outrage claim to a jury.

The dismissal of Brower's claims for assault and negligent infliction of emotional distress is affirmed. The dismissal of his claim for the tort of outrage is reversed.

KENNEDY, A.C.J., and AGID, J., concur.

Review denied at 134 Wn.2d 1021 (1998).

---

[41]*Spurrell*, 40 Wn. App. at 862 (citing *Jackson*, 25 Wn. App. 81.)

[42]RESTATEMENT (SECOND) OF TORTS § 46 cmt. j; *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. k.

[43]WPI 14.03.

[44]*See* RESTATEMENT (SECOND) OF TORTS § 46 cmt. j.