216 P.3d 1089 (2009)
In re DETENTION OF Jeshuel BOYNTON, Petitioner.
No. 61891-1-I.
Court of Appeals of Washington, Division 1.
September 21, 2009.
*1090 Kenneth P. Henrikson, The Defender Association, Seattle, WA, for Petitioner.
David J.W. Hackett, Alison Moore Bogar, King County Prosecutor's Office, Seattle, WA, for Respondent.
SCHINDLER, C.J.
¶ 1 The State filed a petition to commit Jeshuel Amos Boynton as a sexually violent predator under chapter 71.09 RCW. The State alleged Boynton had been convicted of a sexually violent offense under former RCW 71.09.020(15) (2006), specifically, incest in the first degree of a victim under the age of fourteen, and that Boynton suffers from a mental abnormality that makes him likely to *1091 engage in predatory acts of sexual violence.[1] "The trial court certified the following question for discretionary review: Whether incest in the first degree is a predicate offense under RCW 71.09.020(15) when the court finds in the RCW 71.09 proceeding that the offense was against a victim under age fourteen (14)." Boynton does not dispute that he was convicted of incest in the first degree of his seven year-old brother in 1999. However, Boynton contends the court erred in denying his motion to dismiss the petition because the age of the victim is not an element of the crime of incest in the first degree. We hold that under the plain and unambiguous language of RCW 71.09.020(17), a conviction of incest in the first degree and proof beyond a reasonable doubt that the child was "under age fourteen," meets the definition of a sexually violent offense that qualifies as a predicate offense in a sexually violent predator civil commitment proceeding.

FACTS
¶ 2 On May 12, 2008, the State filed a petition to commit 22-year-old Jeshuel Amos Boynton as a sexually violent predator under chapter 71.09 RCW, the Sexually Violent Predators (SVP) statute. The petition alleged Boynton met the criteria for commitment based on his 1999 conviction for incest in the first degree of a victim under the age of fourteen, a recent overt act, and the evaluation of a psychologist stating that Boynton suffers from a mental abnormality that made him likely to engage in sexually violent behavior.
¶ 3 In 1999, 13-year-old Boynton pleaded guilty to incest in the first degree. Boynton admitted to putting his mouth on his 7-year-old brother's penis and attempting to put his penis in his brother's mouth. The court suspended imposition of a 52 week manifest injustice disposition and imposed a special sexual offender disposition alternative (SSODA) with a number of conditions, including counseling and satisfactory progress in a treatment program. In June 2000, the court revoked the SSODA and imposed the 52 week disposition. After his release from detention, Boynton lived at the Northwest Children's Home in Idaho until he turned 18. The Northwest Children's Home staff diagnosed Boynton with depressive disorder, attention deficient hyperactivity disorder, and oppositional defiant disorder.
¶ 4 In May 2004, Boynton was involuntarily admitted to Harborview. A psychiatrist diagnosed Boynton with a schizoaffective disorder and prescribed medication. Boynton was discharged from Harborview on July 7.
¶ 5 On July 29, Boynton was arrested for walking naked in downtown Portland, Oregon. On August 26, Boynton was arrested for lewd conduct at the Seattle Public Library. A patron reported that Boynton was masturbating while looking at pornography on a library computer. Boynton was not charged with a crime, but was barred from using the Seattle Public Libraries for one year.[2]
¶ 6 On March 4, 2006, Boynton was at the White Center Library when he introduced himself to S.G. and C.M. S.G. told Boynton she was 14 years old. Boynton asked S.G. if he could take her to dinner. When she refused, Boynton asked S.G. if she would have sex with him for money. S.G. and C.M. reported the incident to the library staff, who called the police. Boynton gave the police a false name. However, Boynton admitted that he had solicited S.G. for sex "`cause I like minors.'"
¶ 7 On May 1, Boynton pleaded guilty to communicating with a minor for immoral purposes. On June 5, the court sentenced Boynton to 9 months in jail and 12 months of community custody. The conditions of community custody included having no unsupervised contact with minors, obtaining a sexual *1092 deviancy evaluation, and following all treatment recommendations.
¶ 8 Boynton was released to community custody in 2007. While on community custody, Boynton admitted having sexual intercourse with a 15-year-old female four times. Boynton said that he had sex with the girl because "he thought he was going to get away with it."
¶ 9 On November 5, Boynton told his Sound Mental Health case manager and the sex offender treatment provider that he planned to sexually assault an 18-year-old woman named Holly J. by luring her into the woods to rape her.
¶ 10 On January 24, 2008, a King County Prosecuting Attorney's Office Special Investigator interviewed Boynton while he was being held in jail for violating the conditions of community custody. Boynton told the investigator that if he was alone with Holly J., "`terrible things would happen.'" Boynton said that "if he was released tomorrow, he would go to the University of Washington to find Holly, cuss her out and try to hurt her." Boynton told the Investigator, "`I need to be locked up for good ... When I am not locked up, I put society in danger.'"
¶ 11 The State asked psychologist Dr. Brian Judd to determine whether Boynton met the criteria of a sexually violent predator under the SVP statute, chapter 71.09 RCW. Dr. Judd reviewed over 2000 pages of discovery and interviewed Boynton. On April 30, Dr. Judd issued a 20-page "Civil Commitment Clinical Evaluation." The Evaluation documents Boynton's history, the evidentiary basis for a recent overt act, and Dr. Judd's diagnosis and risk assessment of Boynton.
I believe that Mr. Boynton's diagnosis of Paraphilia, Not Otherwise Specified, Nonconsent preferentially predisposes disposes him to the commission of acts of sexual violence which endanger the health and safety of adolescent and young females.
Dr. Judd concluded that Boynton met the criteria as a sexually violent predator. Dr. Judd also concluded that Boynton is at high risk for sexually violent recidivism based on the Static-99 and the Sex Offender Risk Appraisal Guide. The factors Dr. Judd identified as associated with a high risk for imminent recidivism included: "non-compliance with supervision, deviant sexual interests, sexual preoccupation and general self-regulation deficits."
¶ 12 On May 12, the State filed a petition to commit Boynton as a sexually violent predator under chapter 71.09 RCW. The amended petition for commitment alleges that Boynton was convicted of a sexually violent offense in 1999, that the victim was under the age of fourteen, that he committed a recent overt act, and that he suffers from a mental abnormality. The petition attaches and incorporates by reference the judgment and sentence for Boynton's 1999 conviction of incest in the first degree, the 2006 conviction of communicating with a minor, and Dr. Judd's evaluation. The State also filed a detailed summary of facts with attachments, the "Prosecuting Attorney Case Summary" (Case Summary). The Case Summary describes Boynton's sex offense history, his failure to comply with supervision and treatment, the facts in support of the 1999 and 2006 convictions and the recent overt act, and Dr. Judd's diagnosis and recommendation. Boynton filed a demand for a jury trial and a motion to dismiss the petition.
¶ 13 At the probable cause hearing, Boynton stipulated to his identity and that he was convicted of incest in the first degree in 1999. Boynton also did not dispute that the victim of the incest conviction was his seven-year-old brother. However, Boynton moved to dismiss the petition on the grounds that the State could not establish probable cause that he had committed a sexually violent offense. Boynton argued that as a matter of law, "incest against a child under the age of fourteen" is not an element of the crime of incest in the first degree.
¶ 14 The court denied Boynton's motion to dismiss. In the "Order Determining Probable Cause and Detaining Respondent for Evaluation," the court found probable cause to believe that Boynton had been convicted of at least one crime of sexual violence, "Incest in the First Degree, and that the victim, JB was under age of fourteen." The court also found probable cause that Boynton committed a recent overt act that created a "reasonable *1093 apprehension of harm in the mind of an objective person who knows the respondent's history and mental condition...." The court concluded there was probable cause that Boynton suffers from a mental abnormality "that makes him likely to engage in predatory acts of sexual violence if not confined in secure facility," and that he was a sexually violent predator as defined in chapter 71.09 RCW. The court remanded Boynton to the Department of Social and Health Services (DSHS) at the Special Commitment Center and ordered DSHS to conduct an evaluation to determine whether Boynton qualifies as a sexually violent predator.
¶ 15 The court denied Boynton's motion to reconsider. However, at the request of the parties, the court certified the following question for discretionary review under RAP 2.3(b)(4).[3] "Whether incest in the first degree is a predicate offense under RCW 71.09.020(17) when the court finds in the RCW 71.09 proceeding that the offense was against a victim under age fourteen (14)." The court stayed the proceedings pending this court's determination on the discretionary review. We granted discretionary review to address the question certified by the court.

ANALYSIS
¶ 16 To involuntarily commit an individual under chapter 71.09 RCW, the State must prove beyond a reasonable doubt that an individual is a sexually violent predator. A sexually violent predator is an individual "who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). RCW 71.09.020(17) defines a "sexually violent offense" as:
(a) An act defined in Title 9A RCW as rape in the first degree, rape in the second degree by forcible compulsion, rape of a child in the first or second degree, statutory rape in the first or second degree, indecent liberties by forcible compulsion, indecent liberties against a child under age fourteen, incest against a child under age fourteen, or child molestation in the first or second degree; (b) a felony offense in effect at any time prior to July 1, 1990, that is comparable to a sexually violent offense as defined in (a) of this subsection, or any federal or out-of-state conviction for a felony offense that under the laws of this state would be a sexually violent offense as defined in this subsection; (c) an act of murder in the first or second degree, assault in the first or second degree, assault of a child in the first or second degree, kidnapping in the first or second degree, burglary in the first degree, residential burglary, or unlawful imprisonment, which act, either at the time of sentencing for the offense or subsequently during civil commitment proceedings pursuant to this chapter, has been determined beyond a reasonable doubt to have been sexually motivated, as that term is defined in RCW 9.94A.030; or (d) an act as described in chapter 9A.28 RCW, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the felonies designated in (a), (b), or (c) of this subsection.[4]
¶ 17 Boynton contends that because the victim's age is not an element of the crime of incest in the first degree, his 1999 conviction is not a "sexually violent offense" under RCW 71.09.020(17)(a). Boynton also asserts that because he was not convicted of a crime entitled "incest against a child under age fourteen," the State cannot establish probable cause that he is a sexually violent predator. The State contends that under the plain language of RCW 71.09.020(17)(a), a conviction for incest in the first degree and proof *1094 that the child was "under age fourteen" is an act that meets the definition of a sexually violent offense and qualifies as a predicate offense for commitment as a sexually violent predator.
¶ 18 We review issues of statutory interpretation de novo. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). "Our purpose when interpreting a statute is to determine and enforce the intent of the legislature." Rental Housing Ass'n of Puget Sound v. City of Des Moines, 165 Wash.2d 525, 536, 199 P.3d 393 (2009). In interpreting a statute, we look first to the statute's plain language. Armendariz, 160 Wash.2d at 110, 156 P.3d 201. We assume the legislature means what it says. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001). All of the language in the statute should be given effect and we may not render plain language meaningless or superfluous. State v. Williams, 62 Wash.App. 336, 338, 813 P.2d 1293 (1991); In re Detention of Martin, 163 Wash.2d 501, 510, 182 P.3d 951 (2008). When interpreting a statute, we must avoid unlikely, absurd, or strained results. Morris v. Blaker, 118 Wash.2d 133, 143, 821 P.2d 482 (1992).
¶ 19 Under the "plain meaning rule," we examine the language of the statute, other provisions of the same act, and related statutes to determine whether we can ascertain a plain meaning. City of Seattle v. Allison, 148 Wash.2d 75, 81, 59 P.3d 85 (2002). Each provision must be read in relation to the other provisions, and we construe the statute as a whole. In re Detention of Williams, 147 Wash.2d 476, 490, 55 P.3d 597 (2002). "Statutes on the same subject matter must be read together to give each effect and to harmonize each with the other." US West Communications, Inc. v. Wash. Util. & Transp. Comm'n, 134 Wash.2d 74, 118, 949 P.2d 1337 (1997). If the plain language of the statute is unambiguous, this court's inquiry is at an end and we enforce "the statute in accordance with its plain meaning." Armendariz, 160 Wash.2d at 110, 156 P.3d 201.
¶ 20 "If, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to construction aides, including legislative history." State ex rel. Citizens Against Tolls v. Murphy, 151 Wash.2d 226, 242-43, 88 P.3d 375 (2004). Language is ambiguous if it is subject to more than one reasonable interpretation, but "is not ambiguous simply because different interpretations are conceivable." Keller, 143 Wash.2d at 276, 19 P.3d 1030. "The spirit and intent of the statute should prevail over the literal letter of the law." Morris, 118 Wash.2d at 143, 821 P.2d 482.
¶ 21 The plain and unambiguous language of RCW 71.09.020(17)(a) defines acts not crimes that qualify as sexually violent offenses for purposes of establishing an individual is a sexually violent predator. RCW 71.09.020(17)(a) explicitly states that a sexually violent offense is, "An act defined in Title 9A RCW as ... incest against a child under age fourteen."[5]
¶ 22 We conclude that the legislature specifically chose to define a sexually violent offense that qualifies as a "predicate offense" for purposes of commitment as a sexually violent predator in RCW 71.09.020(17)(a), as an "act" instead of as a "crime." While some of the acts that are listed in RCW 71.09.020(17)(a) are offenses that are identified by the official title of the crimes in Title 9A RCW, others are not. For instance, rape in the first degree, rape of a child in the first and second degree, and child molestation in the first and second degree are acts that are identified by using the title of the crime in Title 9A RCW. But other acts only qualify as sexually violent offenses if committed in a certain manner or against certain victims. Like "incest against a child under age fourteen," RCW 71.09.020(17)(a) states that rape in the second degree must be by "forcible compulsion" and indecent liberties must either be "by forcible compulsion," or "against a child under age fourteen."
¶ 23 By explicitly defining the acts that qualify as a sexually violent offense in such a manner, the clear intent of the legislature is to limit the individuals who can be considered as sexually violent predators. Moreover, interpreting *1095 the statute to eliminate incest in the first degree of a child under the age of fourteen as a predicate offense that qualifies as a sexually violent offense would impermissibly render the language "incest against a child under age fourteen" meaningless and superfluous. In re Detention of Martin, 163 Wash.2d 501, 510, 182 P.3d 951 (2008).
¶ 24 The language of Title 9A RCW defining the crime of incest in the first degree also supports our interpretation. Little v. Little, 96 Wash.2d 183, 189-90, 634 P.2d 498 (1981) (We presume the legislature is aware of other statutory provisions when enacting and amending statutes). The crime of incest in the first degree has never included the age of the victim as an element of the offense
¶ 25 From 1943 to 1975 the definition of the crime of incest in the first degree stated:
Sexual intercourse between any male and female persons, nearer of kin to each other than second cousins, computing by the rules of the civil law, shall constitute the crime of incest and shall be punished as follows:
(1) When such an act is committed by any male or female person upon a child under the age of ten (10) years, such male or female person shall be guilty of incest and be punished by imprisonment in the state penitentiary for life;
(2) When such act is committed by any male or female person upon a child of ten (10) years and under fifteen (15) years of age, such male or female person shall be guilty of incest and be punished by imprisonment in the state penitentiary for not more than twenty (20) years....[6]
In 1975, the legislature enacted a new provision which stated,
A person is guilty of incest if he engages in sexual intercourse with a person whom he knows to be related to him, either legitimately or illegitimately; as an ancestor, descendant, brother, or sister of either the whole or the half blood.[7]
And in 1982, the legislature defined the crime of incest in terms of first and second degree:
(1) A person is guilty of incest in the first degree if he engages in intercourse with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.
(2) A person is guilty of incest in the second degree if he engages in sexual contact with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister, of either the whole or the half blood.[8]
¶ 26 Apart from a few other minor changes, the language has remained the same since 1982. The current version of RCW 9A.64.020(1)(a) defines the crime of incest in the first degree as:
A person is guilty of incest in the first degree if he or she engages in sexual intercourse with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.
¶ 27 Boynton also asserts that the trial court erred in finding probable cause that the victim was under the age of fourteen. The crux of Boynton's argument is that the State can only prove the fact of the 1999 conviction for purposes of a civil commitment proceeding and is not entitled to prove any additional facts. In support of his argument, Boynton relies on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and State v. Ortega, 120 Wash.App. 165, 174, 84 P.3d 935 (2004).
¶ 28 In Apprendi, the Court held that under the Fifth Amendment and the Sixth Amendment of the Constitution, any fact that increases the maximum penalty must be proved to a jury beyond a reasonable doubt. Apprendi, 530 U.S. at 476, 120 S.Ct. 2348. But Apprendi does not apply to an SVP civil commitment proceeding. In re Det. of Stout, *1096 159 Wash.2d 357, 369, 150 P.3d 86 (2007). "[A]lthough SVP commitment proceedings include many of the same protections as a criminal trial, SVP commitment proceedings are not criminal proceedings.... It is well-settled that the Sixth Amendment right to confrontation is available only to criminal defendants." Stout, 159 Wash.2d at 369, 150 P.3d 86.
¶ 29 Ortega is also inapposite. In Ortega, the State sought to include a prior Texas conviction in the defendant's offender score. However, the Texas conviction was only comparable if the victim was under the age of 12. Because the age of the child was neither proved beyond a reasonable doubt nor admitted by the defendant, we affirmed the trial court's decision to not include the Texas conviction in the offender score.
¶ 30 By contrast, here, while the State need only prove the underlying facts of a crime that qualifies as a sexually violent offense, it is not prevented from proving facts to establish an individual committed a sexually violent offense as defined under RCW 71.09.020(17)(a).[9]Stout, 159 Wash.2d at 367, 150 P.3d 86.[10] Moreover, Boynton does not dispute that the victim of the 1999 incest conviction was under the age of fourteen.
¶ 31 The other cases Boynton cites are also distinguishable. In State v. Delgado, 148 Wash.2d 723, 63 P.3d 792 (2003), the court addressed the question of whether the two strike statute of the Persistent Offender Accountability Act, chapter 9.94A RCW, included a conviction that was not specifically listed. The sentencing court ruled that the defendant's convictions for first degree rape of a child and first degree molestation were the same criminal conduct and did not sentence Delgado as a persistent offender under the two strike law. On appeal, the State asserted that based on Delgado's previous conviction for statutory rape and his convictions for first degree rape of a child and first degree child molestation, Delgado should be sentenced as a persistent offender under the two-strike law. Delgado, 148 Wash.2d at 725, 63 P.3d 792. The court held that because statutory rape was not listed in the two strike statute and the language of the statute was clear, the trial court did not err in refusing to sentence Delgado as a persistent offender. Delgado, 148 Wash.2d at 727, 732, 63 P.3d 792.
¶ 32 In In re Martin, the issue was "whether RCW 71.09.030 authorizes the Thurston County prosecutor to commence a sexually violent predator commitment proceeding if the Thurston County prosecutor never convicted or charged the subject of the proceeding with an offense." In re Martin, 163 Wash.2d at 506, 182 P.3d 951. Because the statutory language was clear, the supreme court concluded another prosecutor could not file the sexually violent predator petition. "RCW 71.09.030 unambiguously authorizes a specific prosecuting attorney to file, or request the filing of, a sexually violent predator petition, namely the prosecuting attorney who convicted or charged the alleged sexually violent predator." In re Martin, 163 Wash.2d at 516, 182 P.3d 951.

CONCLUSION
¶ 33 Because incest in the first degree and proof beyond a reasonable doubt that the victim was under the age of fourteen is an act that is defined as a sexually violent offense under RCW 71.09.020(17)(a), the trial court did not err in denying Boynton's motion to dismiss the petition to commit him as a sexually violent predator.[11] The court also *1097 did not err in concluding that probable cause established Boynton was convicted of incest in the first degree of a child under the age of fourteen. We lift the stay and remand.
WE CONCUR: LAU and GROSSE, JJ.
NOTES
[1] In 2009, the legislature amended RCW 71.09.020. Laws of 2009 c 409 § 1, eff. May 7, 2009. The pertinent provisions are identical, but have been renumbered. The definition of "sexually violent offense" that was formerly RCW 71.09.020(15), is now subsection (17). We refer to the current version throughout the opinion.
[2] On December 6, 2004, Boynton pleaded guilty for attempted failure to register as a sex offender and given an 11 month suspended sentence, with 12 months on community custody.
[3] RAP 2.3 in pertinent part provides:

(b) Considerations Governing Acceptance of Review. Except as provided in section (d), discretionary review may be accepted only in the following circumstances:
...
(4) The superior court has certified, or that all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.
[4] Emphasis added.
[5] Emphasis added.
[6] Laws of 1943, ch. 111, sec. 203.
[7] Laws of 1975, ch. 260, sec. 9A.64.020(1).
[8] Laws of 1982, ch. 129, sec. 9A.64.020.
[9] For the first time, Boynton argues that interpreting RCW 71.09.020(17)(a) to allow the State to prove beyond reasonable doubt incest "against a child under age fourteen" under the SVP statute would nullify the requirement to prove age under other criminal statutes such as RCW 9.41.040. We decline to consider Boynton's argument that was not raised below. RAP 2.5; Brower v. Ackerley, 88 Wash.App. 87, 96, 943 P.2d 1141 (1997).
[10] The State concedes that at trial it must prove beyond a reasonable doubt that the victim of the incest conviction was under the age of fourteen.
[11] Boynton raises a number of other arguments that were not raised below, including whether the State had the authority to initiate commitment proceedings under RCW 71.09.030(5). Because these issues were not raised or argued in the trial court, we decline to consider them for the first time on appeal. RAP 2.5; Brower v. Ackerley, 88 Wash.App. at 96, 943 P.2d 1141.