FILED
COURT OF APPEALS
DIVISION II

2014 APR 29 AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

ROSE SUTTON, as limited guardian ad litem
for N.Y.Y., a Minor,

       Appellant,

  v.

TACOMA SCHOOL DISTRICT No. 10,
Individually; JEFFREY FREDERICK;
individually, and together with "JANE DOE"
FREDERICK and the marital community
composed thereof;

       Respondents.

No. 43962-0-II

PUBLISHED OPINION

MAXA, J. – Rose Sutton appeals an order granting summary judgment to Tacoma School

District No. 10 and Jeffrey Frederick (collectively, School District) on her claims for assault,

battery, and outrage arising from Frederick's alleged conduct toward Sutton's granddaughter,

NYY. Sutton argues that questions of fact exist regarding these claims where Frederick, NYY's

first grade teacher, allegedly berated NYY in a loud voice while towering over her and

physically bumping her until she was pinned against a wall. We reverse the trial court's grant of

summary judgment on the battery and assault claims because questions of fact exist as to

whether Frederick's alleged conduct was intended to cause both offensive contact with NYY and

NYY's apprehension of such contact. But we affirm the trial court's grant of summary judgment

on the outrage claim because although there was evidence of outrageous conduct and intent to cause emotional distress, Sutton failed to present evidence creating a question of fact as to whether NYY actually suffered severe emotional distress as a result of Frederick's alleged conduct. We remand for further proceedings.

## FACTS

Frederick was the instructor in the Therapeutic Learning Center (TLC) at Stanley Elementary School. NYY was a first grade special education student in the TLC. Linda Brieger, a paraprofessional instructional assistant, worked in the TLC with Frederick.

On January 14, 2011, Brieger told Frederick that she needed help with NYY, who had tipped over her desk and poured milk into it. While Frederick was responding to the situation, Sutton happened to walk into the classroom and observe his interaction with NYY. Sutton described the scene in her deposition:

> So now I stepped in the door and I'm looking. And I look in the back, in the dark, and he was back there in front of [NYY], over her with his chest practically on her, hollering and swinging his arms, telling her how he's tired of her, he's getting – she's getting on his dang-gone nerves – well, his damn nerves.
> And I panicked and I said, Why are you talking to her like that? Why are you hollering? . . .
> And he was so intense in talking to her that he didn't even realize I was in the room. . . .
> . . . .
> [He] was just swinging his arms all around her and his chest was bumping up against her. How do you – he was powered over her. She's a little girl.
> [He] bumped her with his chest, because he towered over her. And he was right up on her. He was bumping her and throwing his arms up.

Clerk's Papers (CP) at 59-60. Sutton stated that Frederick was "up in [NYY's] face." CP at 60.

In her subsequent declaration Sutton elaborated that Frederick had NYY "pinned against the wall" and was physically keeping her in the corner as his body was bumping against her. CP at 184. And Sutton could hear Frederick yelling down the hall even before she reached the

2

classroom. Some of the things he yelled were "You make me sick" and "Why are you so stupid?" CP at 207, 183. Sutton claimed that after the incident NYY's face was covered with spit.

Sutton sued the School District on behalf of NYY based on multiple claims for relief, eventually pursuing just three claims: assault, battery, and outrage. Sutton alleged in the complaint that Frederick physically assaulted NYY, screamed and cursed at her, pushed her into a corner while yelling at the top of his voice, and yelled at her so closely that her face was covered with his saliva. The complaint alleged that Frederick later apologized, stating that he had just broken up two fights and had taken his frustration out on NYY.

The School District filed a motion for summary judgment, attaching statements from Frederick and Brieger with an account of the incident radically different than Sutton's. It also pointed out that Sutton's descriptions of the incident became progressively worse over time. In response, Sutton filed the declaration described above. Sutton presented no declaration from NYY and no witness declarations other than her own.

The trial court granted the School District's summary judgment motion, ruling that Sutton failed to present evidence showing that Frederick's conduct was intentional. The trial court also denied Sutton's motion for reconsideration.

ANALYSIS

A. STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). "We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary

3

judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz*, 175 Wn.2d at 271. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 579, 998 P.2d 305 (2000).

B.    BATTERY AND ASSAULT

Sutton argues that summary judgment was inappropriate on her battery and assault claims because her deposition testimony and declaration created questions of fact regarding Frederick's conduct and intent. We agree, and hold that summary judgment was not appropriate on whether Frederick committed battery and assault. We do not address whether Sutton can prove that NYY suffered damages as a result of Frederick's alleged conduct because the existence of actual damages is not an element of the battery and assault causes of action that must be addressed on summary judgment.

1.    Battery

A battery is the intentional infliction of harmful or offensive bodily contact with the plaintiff. *Morinaga v. Vue*, 85 Wn. App. 822, 834, 935 P.2d 637 (1997). More specifically, a battery is " '[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such contact.' " *McKinney v. City of Tukwilla*, 103 Wn. App. 391, 408, 13 P.3d 631 (2000) (alteration in original) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 9, at 39 (5th ed.1984)). "A bodily contact is offensive if it offends a reasonable sense of personal dignity." RESTATEMENT (SECOND) OF

4

TORTS § 19 (1965). For there to be intent to cause harmful or offensive contact, " 'the act must be done for the purpose of causing the contact . . . or with knowledge on the part of the actor that such contact . . . is substantially certain to be produced.' " *Garratt v. Dailey*, 46 Wn.2d 197, 201-02, 279 P.2d 1091 (1955) (quoting RESTATEMENT OF TORTS § 13, cmt. d (1934)). Significantly, the requisite intent for battery is the intent to cause the contact, not the intent to cause injury. *Garratt*, 46 Wn.2d at 201-02.

In her deposition, Sutton testified that she observed Frederick bumping his chest against NYY as he hollered at her. In her subsequent declaration, Sutton elaborated that Frederick had NYY "pinned against the wall" and was physically keeping her in the corner as his body was bumping against her. CP at 184. If these statements are true, a reasonable jury could find that Frederick made bodily contact with NYY and that the contact was offensive.

The School District argues that Sutton's statements cannot create genuine issues of fact that a battery occurred for two reasons. First, the School District argues that Sutton cannot rely solely on her self-serving declaration to avoid summary judgment. The School District claims that a nonmoving party cannot rely on having its statements taken at face value, citing *Heath v. Uraga*, 106 Wn. App. 506, 513, 24 P.3d 413 (2001). We disagree. Although there are circumstances where a party's declaration will not be enough to create a question of fact, here Sutton was an eyewitness and her deposition testimony and declaration were based on her personal observations of Frederick's contact. On summary judgment, we must treat that testimony as true even if it is self serving.

Second, the School District argues that Sutton's version of the events evolved over time and that there were inconsistencies among what she said on the day of the incident, in her deposition, and in her declaration. However, in both her deposition and her declaration – her two

5

sworn statements – Sutton consistently stated that Frederick was bumping NYY as he yelled at her. And in reviewing a summary judgment order, we do not weigh the credibility of seemingly inconsistent statements. *See Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 624, 128 P.3d 633 (2006). Whether Sutton's earlier or later statements are more accurate is an issue that must be resolved at trial.

The School District also argues that even if an offensive touching occurred, summary judgment was appropriate because Sutton provided no evidence regarding Frederick's intent. However, as noted above Sutton was required to create a question of fact as to whether Frederick intended an offensive touching, not that he intended to harm NYY in some way. *Garratt*, 46 Wn.2d at 201-02. And we must draw all reasonable inferences in favor of Sutton. *Lakey*, 176 Wn.2d at 922. Here, a reasonable jury could infer from the facts that Frederick intended to initiate offensive contact with NYY.

On the other hand, we reject Sutton's argument that NYY's face being covered with saliva is enough evidence to support a battery claim. Although Sutton's testimony created a question of fact as to whether NYY had saliva on her face, Sutton provided no evidence that Frederick intended to spit on her. Because saliva may accidentally escape the mouth when someone is yelling in the face of another person, it is not reasonable to infer that Frederick intended to spit on NYY.

We acknowledge that Frederick denies that he made any physical contact with NYY. But treating Sutton's testimony as true, as we must in reviewing a grant of summary judgment, we hold that genuine issues of material fact exist with regard to Sutton's battery claim based on Frederick's alleged bumping of NYY. Conversely, we hold that summary judgment was

appropriate regarding Sutton's claim that Frederick's alleged spitting on NYY constituted a battery.

2. Assault

Even if there has been no bodily contact, a defendant may be liable for assault when he or she acts with an intent to put another person in immediate apprehension of harmful or offensive contact, and that person has such an apprehension. *Brower v. Ackerley*, 88 Wn. App. 87, 92-93, 943 P.2d 1141 (1997) (citing RESTATEMENT (SECOND) OF TORTS § 21). The apprehension must be of imminent contact. *Brower*, 88 Wn. App. at 94.

Here, Sutton did not provide any evidence regarding NYY's reaction to Frederick's conduct while it was occurring. Sutton did not make any personal observations that would support a finding that NYY had an immediate apprehension of harm. And NYY did not provide any statement or testimony.[1] Nevertheless, under the alleged facts presented it can be reasonably inferred that Frederick intended to put NYY in apprehension of being subjected to offensive contact when he towered over her and physically pinned her against the wall. And it can be reasonably inferred that a young girl would have apprehension of offensive contact when a teacher moved toward her in the manner described while yelling at her.

We again acknowledge that Frederick denies that he engaged in the conduct Sutton described. But treating Sutton's testimony as true, we hold that genuine issues of material fact exist with regard to Sutton's assault claim.

---

[1] Sutton stated in her declaration that NYY told her that she was scared when Frederick yelled at her. The School District argued below, and on appeal, that this statement was inadmissible hearsay. The trial court did not address this argument. Because we are reversing and remanding on the assault claim, we need not address this issue.

7

### 3. Damages

Sutton provided no affirmative evidence that NYY suffered any injury as a result of Frederick's alleged battery or assault. However, unlike for the tort of outrage discussed below, suffering actual injury does not appear to be an element of either battery or assault. *See* RESTATEMENT (SECOND) OF TORTS § 18 (battery), § 21 (assault).

In order to recover at trial, Sutton will have to establish that NYY incurred actual damages or that NYY is entitled to "nominal" damages. However, neither the trial court nor the parties addressed the issue of damages below and the parties did not brief this issue on appeal. Accordingly, we need not address what damages, if any, Sutton may be able to recover if she prevails at trial on her battery and assault claims.

### C. OUTRAGE

Sutton argues that genuine issues of fact exist as to whether Frederick's conduct supported an outrage claim. Taking Sutton's testimony as true, as we must when reviewing a summary judgment order, Frederick engaged in extreme and outrageous conduct. But we disagree that Sutton produced evidence creating a question of fact that NYY suffered severe emotional distress as a result.

### 1. Legal Standards

To prevail on a claim for the tort of outrage, also known as intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly inflicted emotional distress on the plaintiff, and (3) the conduct actually resulted in severe emotional distress to the plaintiff. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). "Any claim of outrage must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all

8

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Strong v. Terrell*, 147 Wn. App. 376, 385-86, 195 P.3d 977 (2008) (emphasis omitted) (internal quotation marks omitted) (quoting *Kloepfel*, 149 Wn.2d at 196).

The elements of outrage generally are factual questions for the jury. *Strong*, 147 Wn. App. at 385. However, a trial court faced with a summary judgment motion must "make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury." *Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 141 Wn. App. 407, 429, 167 P.3d 1193 (2007) (internal quotation marks omitted) (quoting *Jackson v. Peoples Fed. Credit Union*, 25 Wn. App. 81, 84, 604 P.2d 1025 (1978)). Courts may consider a number of factors in analyzing whether conduct is sufficient to support an outrage claim, including (1) the position the defendant occupied; (2) whether the plaintiff was particularly susceptible to emotional distress and the defendant was aware of the susceptibility; (3) whether the defendant's conduct was privileged; (4) whether the degree of emotional distress was severe as opposed to merely annoying, inconvenient or embarrassing; and (5) whether the defendant was aware of a high probability that his or her conduct would cause severe emotional distress, and consciously disregarded that probability. *Doe*, 141 Wn. App. at 429-30.

2.   Extreme and Outrageous Conduct

To sustain an outrage claim, the defendant's conduct must be so offensive as to lead an average member of the community to exclaim " 'Outrageous!' " *Kloepfel*, 149 Wn.2d at 196 (internal quotation marks omitted) (quoting *Reid v. Pierce County*, 126 Wn.2d 195, 201-02, 961 P.2d 333 (1998)). Here, according to Sutton, Frederick had NYY pinned against wall and was bumping her and waving his arms as he got "in her face" and loudly berated her. CP at 60.

Sutton could hear the yelling from the classroom as she came down the hall. Some of the things Frederick allegedly yelled were, "You make me sick" and "Why are you so stupid?" CP at 207, 183. After the incident, NYY's face was covered with saliva. And the power disparity was striking. Frederick was an adult in a position of authority, and NYY was a first grade student with special needs and who may have been particularly vulnerable. If Sutton's statements are true, a reasonable jury could find that Frederick's conduct was outrageous.

As discussed in the battery section above, we reject the School District's arguments that Sutton's statements must be disregarded because they are self serving and her multiple statements contain inconsistencies. The School District also argues that Sutton's own actions after the incident belie her claim that Frederick's conduct was outrageous. After discussing her concerns with Frederick about his raising his voice to NYY, Sutton allowed her granddaughter to return to his classroom. The School District argues that if Frederick's behavior was atrocious and utterly intolerable in a civilized community, she would not have left NYY in his care. However, the School District's argument essentially addresses whether Sutton's description of the incident is credible. We cannot resolve credibility issues on summary judgment. *Barker*, 131 Wn. App. at 624.

3.   Intent To Cause Emotional Distress

Outrage requires that the defendant either intended to cause emotional distress or recklessly caused such distress. *Kloepfel*, 149 Wn.2d at 196. Frederick denies the incident occurred the way Sutton described it, and he presumably would deny any intent to cause NYY emotional distress. However, if Sutton's testimony is true, a jury reasonably could infer that Frederick at least recklessly acted in a way that could cause emotional distress when he screamed insults at NYY and physically pinned her against the wall.

### 4. Emotional Distress

To prevail on an outrage claim, a plaintiff is required to come forward with evidence that he or she actually suffered *severe* emotional distress as a result of the defendant's conduct. *Kloepfel*, 149 Wn.2d at 203. Emotional distress includes 'all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.' " *Kloepfel*, 149 Wn.2d at 203 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. j). However, liability arises only when the emotional distress is extreme. RESTATEMENT (SECOND) OF TORTS § 46, cmt. j. There must be more than " 'transient and trivial emotional distress.' " *Kloepfel*, 149 Wn.2d at 198 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. j) Nevertheless, because outrage is an intentional tort the plaintiff need not show bodily harm or objective symptomatology. *Kloepfel,* 149 Wn.2d at 198.

### a. No Direct Evidence

Here, Sutton came forward with no affirmative evidence that NYY suffered severe emotional distress. NYY submitted no declaration or testimony claiming that she experienced emotional distress or describing the nature of that distress. Sutton stated in her declaration that NYY told her that she was scared when Frederick yelled at her and that she felt angry, sad, and mad and did not want to go back to Frederick's class.[2] Sutton also testified that NYY was traumatized and very upset following the incident. These emotions would constitute emotional distress under *Kloepfel.* 149 Wn.2d at 203. However, there is no evidence regarding the intensity of these feelings or their duration. Under *Kloepfel*, Sutton was required to come forward with

---

[2] The School District argued below, and on appeal, that these statements were inadmissible hearsay. The trial court did not address this argument. Because we hold that these statements are not enough to create a question of fact on the existence of severe emotional distress, we need not address their admissibility.

11

evidence that any emotional distress was more than transient or trivial. *Kloepfel*, 149 Wn.2d at 203. Without such evidence, the fact that NYY may have been upset or had negative feelings because of the incident is not enough to create a question of fact as to whether she suffered *severe* emotional distress.

Sutton also failed to provide any personal observations that would support a finding that NYY suffered severe emotional distress. Although, as noted above, Sutton testified that NYY was traumatized and very upset following the incident, she did not provide any basis for those assertions. A party may not rely on argumentative assertions to avoid summary judgment. *Hendrickson v. Tender Care Animal Hosp. Corp.*, 176 Wn. App. 757, 762, 312 P.3d 52 (2013), *review denied*, 179 Wn.2d 1013 (2014). Sutton did observe that NYY at times would yell at her dolls and call herself stupid, but this behavior is not necessarily an indication of severe emotional distress and is not enough to create a question of fact on this issue.

Finally, Sutton produced no evidence from any therapists, counselors or medical providers that would support a finding that NYY suffered emotional distress from the alleged incident with Frederick. NYY visited a doctor a month after the accident and Sutton reported that NYY had experienced trauma and stress because of the incident, but the doctor did not make any reference to emotional distress. Another doctor later evaluated NYY for her behavior problems, eventually prescribing drugs and therapy. But there is no evidence that NYY or Sutton discussed the incident with him.

  b. Inference of Severe Emotional Distress

In the absence of direct evidence, the question here is whether we can infer that NYY suffered severe emotional distress as a result of Frederick's alleged conduct. Our Supreme Court in *Kloepfel* stated that once the first two elements of outrage are established, "it can be fairly

presumed that severe emotional distress was suffered." 149 Wn.2d at 202. The court cited with approval *Carmody v. Trianon Co.*, 7 Wn.2d 226, 109 P.2d 560 (1941), where the court upheld an award of damages for mental anguish caused when the plaintiff was physically beaten without requiring direct proof of that mental anguish. . *Kloepfel*, 149 Wn.2d at 202.

However, the court in *Kloepfel* was addressing a situation far different than the facts here. Kloepfel's former boyfriend threatened to kill her, threatened to kill the man she was dating if she continued seeing him, called her home 640 times, called her work 100 times, called the homes of men she knew numerous times, and repeatedly drove past her house at all hours. *Kloepfel*, 149 Wn.2d at 194-95. The evidence showed that this conduct severely disrupted Kloepfel's life and made it impossible for her to carry on a normal dating relationship. *Kloepfel*, 149 Wn.2d at 194. And there was affirmative evidence that this conduct caused Kloepfel to suffer symptoms of emotional distress, including nervousness, sleeplessness, hypervigilance, and stomach upset. *Kloepfel*, 149 Wn.2d at 202. Based on these facts, the court concluded that no rational person could endure this constant harassment without suffering severe emotional distress. *Kloepfel*, 149 Wn.2d at 202.

In *Brower*, Division One of this court also stated that the extremity of the outrageous conduct could itself provide evidence of severe emotional distress. 88 Wn. App. at 102. Similar to *Kloepfel*, the conduct in *Brower* was a 20-month campaign of harassing telephone calls that included threats to injure and kill Brower. 88 Wn. App. at 90-91. In addition, Brower presented evidence that he experienced symptoms of emotional distress, including panic, terror, insecurity, rising pulse, light-headedness, sweaty palms, insecurity, and the inability to concentrate. *Brower*, 88 Wn. App. at 91. Based on this evidence, the court concluded that a jury could find that Brower suffered severe emotional distress.

Despite the broad statements in *Kloepfel* and *Brower*, we read those cases as allowing for an inference of *severe* emotional distress only based on long-term outrageous conduct and only when the plaintiff has provided some evidence of significant emotional distress. In contrast, here NYY was subjected to a brief, isolated incident. And Sutton provided no evidence that NYY had in fact suffered any significant emotional distress that was more than transient or trivial. Under these facts, we cannot infer that NYY suffered severe emotional distress. Accordingly, summary judgment was appropriate on Sutton's outrage claim.

We reverse the trial court's grant of summary judgment on Sutton's battery and assault claims, but we affirm the trial court's grant of summary judgment on the outrage claim. We remand for further proceedings.

MAXA, J.

We concur:

HUNT, J.

BJORGEN, J.

14