# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICHARD TURAY, | No. 47599-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| AL NERIO, MARY REGER, KRISTIN CARLSON, TODD DUBBLE, BYRON EAGLE, ELENA M. LOPEZ, HOLLY CORYELL, JOHN SCOTT, | |
| Appellants. | |

MAXA, A.C.J. – Eight employees at the Department of Social and Health Services Special Commitment Center (SCC) appeal the trial court's denial of their summary judgment motion in a 42 U.S.C. § 1983 lawsuit filed against them by Richard Turay, a detainee at the SCC. Turay's lawsuit alleged that the SCC employees had violated his constitutional rights by temporarily restricting his use of SCC's telephones based on an allegation that he was making harassing calls to his mother.[1]

---

[1] While review was pending in this court, Turay passed away. Andre Young, as attorney in fact for Turay, has been substituted as the respondent under RAP 3.2(a). We continue to refer to Turay as the respondent. Under RCW 4.20.046(1), Turay's 42 U.S.C. § 1983 claim survives his death if he has a child. We will consider Turay's appeal because the SCC employees do not dispute that Turay has a child and do not argue that Turay's claim does not survive.

We hold that even if the SCC employees violated Turay's constitutional rights, they are entitled to qualified immunity from Turay's lawsuit. We also decline to address Turay's "cross-appeal" identified in his brief regarding the trial court's dismissal of his loss of consortium claim because he failed to file a notice of discretionary review.[2]

Accordingly, we reverse the trial court's summary judgment order and remand for the trial court to enter judgment in favor of the SCC employees on Turay's constitutional claims and dismiss those claims.

FACTS

Turay was detained at the SCC as a result of committing multiple sexually violent crimes. *In re Pers. Restraint of Turay*, 153 Wn.2d 44, 46, 101 P.3d 854 (2004). He had been detained there since 1994. *Id.*

*Turay's Contact with His Mother*

Turay frequently used the pay telephones provided for detainees at SCC to contact his mother, Betty Turay. Mrs. Turay received care from her granddaughter Ingrid Hunter, who was her court-appointed guardian.

In April 2014, Hunter sent an email to Becky Denny, the legal coordinator at SCC, about Turay's contact with his mother. Hunter stated that Turay had begun repeatedly calling and

---

[2] Turay also argues that the SCC employees' counsel violated the rules of professional conduct by making material misrepresentations about the record in its opening appellate brief. Turay claims that SCC's counsel violated RPC 3.3, which provides that an attorney "shall not knowingly: (1) make a false statement of fact or law to a tribunal . . . ; [or] (4) offer evidence that the lawyer knows to be false." However, this argument is not directly relevant to the issues in this appeal, we have no authority to consider professional conduct rule violations, and Turay does not request an award of sanctions. Therefore, we do not address it.

harassing his mother. Hunter requested that Denny help prevent Turay from making any more calls or otherwise contacting his mother.

On April 15, SCC placed a temporary telephone use restriction on Turay pursuant to its telephone access policy. The restriction prohibited Turay from using telephones at SCC other than its legal phones. SCC also prohibited Turay from having any form of contact with his mother, either personally or through a third party. The restriction lasted for one month, until May 15.

Beginning on May 1, Hunter obtained three successive restraining orders prohibiting Turay or any third party from contacting Hunter or Mrs. Turay. The restraining orders expressly authorized SCC staff to prevent contact between Turay and his mother. On May 27, SCC imposed a second restriction, which prohibited Turay from having any contact with Mrs. Turay personally or through a third party, including through SCC telephones. However, the second restriction did not prevent Turay from using the facility's telephones for other purposes.

*Turay Lawsuit*

Turay filed a lawsuit against the SCC employees, alleging that the telephone restrictions violated his telephone use rights and right of association,[3] caused a loss of consortium, and constituted slander and defamation. Turay alleged that, under the "*Turay* injunction," he had a right to adequate and unmonitored phone access, including making and receiving calls.[4]

---

[3] Although Turay did not state the legal basis for his constitutional claims, he had a right of action for such claims only under 42 U.S.C. § 1983.

[4] The *Turay* injunction, imposed by a federal district court judge in 1994, was the result of prior litigation between Turay and SCC. *See Turay v. Seling*, 108 F. Supp. 2d 1148, 1150 (W.D. Wash. 2000) (providing a history). Among other matters, the injunction required SCC to "[e]liminate the monitoring of residents' telephone calls and the bar on outgoing calls (other than

The SCC employees filed a summary judgment motion, seeking dismissal of Turay's claims. The trial court granted summary judgment in favor of the SCC employees on Turay's loss of consortium, slander, and defamation claims. The trial court ruled that Turay did state a claim for deprivation of telephone use rights, but required that he file an amended complaint adequately pleading that claim and clarifying the appropriate dates of the alleged violations. In response, Turay filed a second amended complaint stating that the challenged restrictions had been imposed on April 15, 2014 and May 27, 2014.

Turay and the SCC employees subsequently filed cross-motions for summary judgment. Turay argued that there was no genuine issue of fact that the SCC employees had violated his constitutional rights, including those protected in the *Turay* injunction. The SCC employees argued that Turay's constitutional rights had not been violated, that they had not violated a right established in the *Turay* injunction, and that qualified immunity applied even if there was a constitutional violation.

The trial court denied both parties' motions. The trial court ruled that there was a question of material fact as to the reasonableness of SCC's deprivation of telephone rights. It also ruled that SCC's claim of qualified immunity was "unavailable under these circumstances." Clerk's Papers (CP) at 103.

The SCC employees filed a notice of discretionary review regarding the trial court's denial of its summary judgment motion. A commissioner of this court granted review to resolve

---

collect)." *Id.* at 1157. In 2007, the district court found SCC to be in compliance and dissolved the injunction. *Turay v. Richards*, No. C91-0664RSM, 2007 WL 983132, at *5 (W.D. Wash. Mar. 23, 2007).

both the constitutional and qualified immunity questions. Turay did not file his own notice for discretionary review. After review was granted, Turay passed away.

ANALYSIS

A.    STANDARD OF REVIEW

When reviewing a denial of summary judgment, we engage in the same inquiry as the trial court. *Robb v. City of Seattle*, 176 Wn.2d 427, 432, 295 P.3d 212 (2013). We review the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.* at 432-33. We review issues of law de novo. *Id.* at 433.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck*, 184 Wn.2d at 370. "If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

B.    QUALIFIED IMMUNITY FROM § 1983 CLAIMS

    1.    Liability Under § 1983

42 U.S.C. § 1983 provides a cause of action to citizens who have been deprived of their rights under the constitution and laws by someone acting under the color of state law. It states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5

42 U.S.C. § 1983.

A plaintiff may not bring suit under § 1983 in state court against the state or against a state official acting in an official capacity because a state is not a "person" subject to suit within the meaning of § 1983. *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 285-86, 4 P.3d 808 (2000). Similarly, state agencies are not subject to § 1983 actions. *Hontz v. State*, 105 Wn.2d 302, 309, 714 P.2d 1176 (1986). But a plaintiff may assert § 1983 claims against government officials in their individual capacities for actions taken under color of state law. *Republican Party*, 141 Wn.2d at 286.

Many of the cases addressing the constitutional rights of persons detained by the state concern incarcerated criminal offenders. But Turay was civilly committed. Although those two types of detainees have similar rights, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982); *see also Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

2. Application of Qualified Immunity

The SCC employees argue that, regardless of whether they committed any constitutional violations, they are entitled to qualified immunity because Turay cannot show that the rights he asserted were clearly established. We agree.

a. Legal Principles

Government officials are entitled to qualified immunity against constitutional claims brought under § 1983 unless the official's action violated a clearly established right. *See, e.g.*,

*Robinson v. City of Seattle*, 119 Wn.2d 34, 64-65, 830 P.2d 318 (1992). Qualified immunity " 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.' " *Feis v. King County Sheriff's Dep't*, 165 Wn. App. 525, 531, 267 P.3d 1022 (2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). Defendants may establish their entitlement to qualified immunity on a summary judgment motion. *Harrell v. Dep't of Soc. & Health Servs.*, 170 Wn. App. 386, 405, 285 P.3d 159 (2012). The entitlement to qualified immunity is a question of law that we review de novo on appeal. *Feis*, 165 Wn. App. at 538.

Once a defendant asserts a qualified immunity defense, the plaintiff has the burden of establishing the violation of a clearly established constitutional right. *Robinson*, 119 Wn.2d at 65-66. Specifically, the plaintiff must show that (1) the complaint alleged facts that, taken in the light most favorable to the plaintiff, showed that an official's conduct violated a constitutional right, and (2) the asserted constitutional right was clearly established at the time of the alleged violation. *Feis*, 165 Wn. App. at 539-40; *see Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). When appropriate, we have discretion to decide the issue based on the second prong without determining whether the defendant has violated a constitutional right. *Feis*, 165 Wn. App. at 540.

Here, we elect to address the second prong of the qualified immunity analysis: whether the constitutional right that Turay alleges the SCC employees violated was clearly established. Therefore, we assume without deciding that Turay alleged facts showing that the SCC employees violated a constitutional right.

b.    Identifying Specific Constitutional Right

The first step in our qualified immunity analysis is to identify with specificity the constitutional right at issue.  *See Feis*, 165 Wn. App. at 541-43.  "[P]laintiffs seeking to overcome claims of qualified immunity [must] articulate with particularity the clearly established right that they allege to have been violated."  *Id.* at 541.  This articulation of a particularized right must be clear enough that a reasonable official would understand that his or her conduct would violate that right.  *Id.*

As a result, a plaintiff must do more than generally identify a broad constitutional principle in order to avoid qualified immunity.  *See id.* at 542.  In *Feis*, officers searched the plaintiff's residence for firearms and seized several of them after the plaintiff was arrested on domestic violence charges.  *Id.* at 534-36.  In a subsequent § 1983 action against the officers, the plaintiff framed the constitutional right at issue as the general Fourth Amendment guarantee not to have his home subjected to an unreasonable search.  *Id.* at 542.  The court stated that "the particularized right allegedly violated must be far more specific than simply the right to be free from unreasonable searches and seizures."  *Id.*  Instead, the court reframed the constitutional right as incorporating the specific facts of that particular case.  *Id.*

Here, Turay alleges that the SCC employees violated his First Amendment and procedural due process rights by restricting his telephone access without notice, a hearing, or an appeal process.  Although this allegation is fairly specific, the articulation of the constitutional right at issue must include the specific facts of the case.  *See Gallegos v. Freeman*, 172 Wn. App. 616, 629, 291 P.3d 265 (2013) (requiring a " 'parallel or comparable factual pattern' " for a right to be clearly established (quoting *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008)).

8

Accordingly, we frame the constitutional right SCC allegedly violated as temporarily restricting Turay's telephone access for non-legal calls without notice, a hearing, or an appeal process based on an allegation that Turay had been repeatedly calling and harassing his mother.[5]

### c. Absence of Clearly Established Right

A constitutional right is clearly established when "existing precedent has placed the statutory or constitutional question raised by an alleged violation 'beyond debate.' " *Feis*, 165 Wn. App. at 543 (quoting *al-Kidd*, 563 U.S. at 741). A clearly established right must be based on (1) controlling authority from the United States Supreme Court, or (2) a robust consensus of precedent from courts throughout the United States. *Feis*, 165 Wn. App. at 543, 549; *see also al-Kidd*, 563 U.S. at 741. A "robust consensus of precedent" means more than a decision from a single federal circuit court, even the Ninth Circuit Court of Appeals. *Feis*, 165 Wn. App. at 547.

Here, Turay has failed to cite any controlling Supreme Court authority establishing that a detainee's telephone use cannot be temporarily restricted without notice, a hearing, or appeal rights when imposed for the purpose of preventing that detainee from making harassing phone calls. Therefore, the question is whether Turay can show a national consensus of precedent regarding the right to telephone access under these circumstances.

Turay has failed to show a robust consensus of precedent. First, Turay claims that the 1994 *Turay* injunction placed SCC officials on notice that civil detainees had a constitutional right to telephone access. But the relevant portion of that injunction simply required SCC to stop monitoring detainees' telephone calls and to allow outgoing calls. *Turay v. Seling*, 108 F. Supp.

---

[5] We focus on the first restriction imposed on April 15, 2014, which was broader than the second restriction imposed on May 27. If the first restriction did not violate a clearly established constitutional right, the narrower second restriction necessarily did not as well.

2d 1148, 1156-57 (W.D. Wash. 2000). The injunction did not address whether a temporary telephone ban for non-legal calls intended to prevent harassing telephone calls violated the detainees' constitutional rights.

Second, Turay relies on *Keenan v. Hall*, in which the Ninth Circuit stated that "[p]risoners have a First Amendment right to telephone access, subject to reasonable security limitations." 83 F.3d 1083, 1092 (9th Cir. 1996). However, the statement was dicta and the court in *Keenan* did not hold that a detention facility could not temporarily restrict a detainee's telephone access to address a harassment allegation. The two other Ninth Circuit cases Turay cites also did not address a temporary telephone restriction under the facts of this case. *See Henry v. County of Shasta*, 132 F.3d 512, 519, *amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1997); *Carlo v. City of Chino*, 105 F.3d 493, 496 (9th Cir. 1997).

Further, the Ninth Circuit in *Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002), questioned the statement in *Keenan* and the two cases citing that statement upon which Turay relies. The court stated:

> The genesis of this purported constitutional right to use a telephone is obscure. Our cases have not identified the source of the right, and our pronouncements of its existence have been conclusory and unnecessary to the decisions.

*Id*. at 1048 (citation omitted). The court held that the temporary restriction of the plaintiff's telephone access in that case did not violate the First Amendment. *Id*. at 1048-49.

Third, even if the Ninth Circuit had adopted a rule that a detainee has a constitutional right to telephone access under these circumstances, Turay has made no effort to show a *national* consensus on this issue. Other than the three cases that *Valdez* arguably discredited, Turay cites to no other authority to support his alleged constitutional right to unrestricted telephone access.

Finally, regarding the due process component of his claim, Turay cites no authority establishing that a detainee has a constitutional right to notice, a hearing, or an appeal process before his or her telephone access can be temporarily restricted in order to prevent harassing telephone calls. Even if he could cite some authority for this proposition, he certainly has not shown any national consensus of authority on this issue.

We hold that Turay has not shown that there is a clearly established constitutional right that prohibits a detention facility from temporarily restricting a civil detainee's telephone access without notice, a hearing, or an appeal process in order to address allegations of harassing telephone calls. Accordingly, we hold that the SCC employees are entitled to qualified immunity from Turay's 42 U.S.C. § 1983 claims.

C.      TURAY'S CROSS APPEAL

In a section of his brief entitled "cross appeal," Turay argues that we should reverse the trial court's dismissal of his claim for loss of consortium. However, RAP 5.1(d) requires that a party seeking cross review file a notice of appeal or notice for discretionary review to obtain affirmative relief. *Houk v. Best Dev. & Const. Co.*, 179 Wn. App. 908, 915, 322 P.3d 29 (2014). Turay did not file a notice for discretionary review when SCC filed its notice of discretionary review. Therefore, we do not consider Turay's argument.

CONCLUSION

We reverse the trial court's denial of summary judgment and remand for entry of judgment in favor of the SCC employees on Turay's constitutional claims and dismiss those claims.

No. 47599-5-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

JOHANSON, J.

MELNICK, J.