# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ESTATE OF JAMES CRAMPTON ROGERS, by and through PAUL CULLEN, Personal Representative of the ESTATE, | No. 49123-1-II |
| Appellant, | |
| v. | |
| THE STATE OF WASHINGTON and RUSSELL SANDERS, in his capacity as a Washington State Trooper, and as an individual, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. —James Crampton Rogers was pulled over by a Washington State Patrol trooper and arrested. After Rogers was arraigned, he agreed to a pretrial diversion agreement and order. Rogers agreed to waive his rights to challenge the evidence against him and that probable cause existed to believe he committed the crimes of driving under the influence, possession of marijuana, and possession of drug paraphernalia. Rogers later sued the State, the trooper, and the towing company that impounded his vehicle. Rogers's civil suit alleged 42 U.S.C. § 1983 liability, trespass, and negligence, for his traffic stop and arrest, and conversion for impounding his vehicle. Rogers later died, and his estate (the Estate) continued the prosecution of his claims. The superior court granted summary judgment against the Estate and dismissed the suit.

On appeal, the Estate argues the superior court erred in failing to consider Rogers's testimony during a Department of Licensing administrative hearing challenging the Department's revocation of Rogers's driver's license, and erred in dismissing the § 1983, trespass, negligence, and conversion claims against the State and the trooper on summary judgment and in denying the Estate's motion for reconsideration. We hold that the superior court did not err in declining to consider Rogers's testimony from the Department of Licensing hearing, did not err in granting summary judgment, and did not err in denying reconsideration. Therefore, we affirm.

FACTS

A.    INCIDENT AND CRIMINAL PROCEEDINGS

On June 24, 2008, Washington State Patrol Trooper Russell Sanders received information from the Washington State Patrol's dispatcher that "a small blue pick up [sic] with a top[p]er," along with the vehicle license plate number, was heading west from the Hood Canal Bridge and was having problems maintaining lane travel. Clerk's Papers (CP) at 38. Trooper Sanders found the truck and observed it "drive on to [sic] the centerline" twice, and "drift[] to the right and quickly jerk[] the vehicle to the left." CP at 38. Trooper Sanders initiated a traffic stop of the pickup. Rogers was driving the pickup.

Upon making contact with Rogers, Trooper Sanders observed "[a]n odor of alcohol emitting from [Rogers's] vehicle, as well as the odor of alcohol and marijuana emitting from Rogers'[s] person." CP at 95. Rogers also had "[b]loodshot, droopy, dilated and watery eyes; he had slurred speech and unnecessarily repeated himself." CP at 95. Rogers "attempted to hide marijuana and drug paraphernalia from [Trooper Sanders]." CP at 95. After Rogers admitted that

2

he had a drink earlier in the night, Trooper Sanders conducted field sobriety tests, which Rogers failed.

Trooper Sanders became a commissioned Washington State Patrol Trooper in August 2007, and has received Standard Field Sobriety Tests training. Based on his interactions with Rogers, he determined that Rogers's conduct "was consistent with someone under the influence of intoxicants." CP at 95. Trooper Sanders placed Rogers under arrest for suspicion of driving under the influence, and possession of marijuana and paraphernalia. Rogers was transported to jail, while his vehicle was impounded. CP at 95.

Michael Armstrong from the towing company impounded Rogers's truck. In securing Rogers's truck to tow, "a duffel bag fell out of the rear of the truck" and a "small can fell out of a side pocket of the duffel bag." CP at 52. Inside the can was "a pipe and what appeared to be marijuana." CP at 52. Armstrong could also smell marijuana at the rear of the truck. CP at 57.

Rogers was charged with driving under the influence, possession of marijuana and drug paraphernalia, and driving with an open container of alcohol. Subsequently, Rogers entered into a pretrial diversion program pursuant to a pretrial diversion agreement and order.

Under the pretrial diversion agreement and order, Rogers waived his right to challenge the admissibility of his statements, as well as his right to challenge physical, oral, or identification evidence against him. The pretrial diversion agreement and order "ORDERED that probable cause exists to believe that the Defendant committed the offense(s) charged herein," and that Rogers entered into the Pretrial Diversion Agreement and Order "freely, voluntarily and knowingly." CP at 93. The offenses that Rogers was charged with in the pretrial diversion agreement and order were (1) driving under the influence, (2) possession of marijuana, and (3) possession of drug

paraphernalia. The pretrial diversion agreement and order was filed on January 21, 2009, and has not been reversed or otherwise invalidated. Rogers completed his diversion conditions and the charges were dismissed.

B.     ADMINISTRATIVE HEARING

On October 30, 2008, Rogers challenged the Department of Licensing's (DOL) revocation of his driving privileges in an administrative hearing. The hearing was conducted telephonically, with a DOL hearing officer, Rogers, and Rogers's attorney participating. The DOL hearing officer filed an order on December 8, 2008, dismissing the proposed revocation, and finding that "Rogers expressed confusion regarding the blood test after submitting to a BAC test" and "[t]hat confusion was not clarified." CP at 180.

C.     CIVIL SUIT

In April 2011, more than two years after entering into the pretrial diversion and agreement order, Rogers filed a civil suit against Trooper Sanders, individually and in his capacity as a Washington State Trooper, the State of Washington, and the towing company. The complaint alleged (1) a Fourth Amendment violation as a result of the traffic stop, (2) a Fourth Amendment violation as a result of the arrest, (3) 42 U.S.C. § 1983 liability as a result of the unlawful stop and arrest, (4) trespass and conversion, (5) negligence, and (6) malicious prosecution.

Rogers died on March 13, 2012, before the suit was resolved. His estate pursued the claims. The towing company was dismissed from the suit on summary judgment in 2014.[1]

---

[1] Rogers has not appealed the dismissal of the towing company.

The State and Trooper Sanders (collectively the State) moved for summary judgment in February 2016. In its response, the Estate cited portions of what it claimed was part of the transcript of the DOL administrative hearing. The Estate also voluntarily dismissed its claims for municipal liability and malicious prosecution. The superior court granted the State's motion for summary judgment, dismissing all claims with prejudice.

The Estate moved for reconsideration. In its motion to reconsider, the Estate alleged that the superior court refused to consider the alleged partial transcript of the DOL administrative hearing because it was not certified by a court reporter and the State was not a party to the proceeding.[2] Attached to the motion to reconsider was a transcript from the hearing, transcribed by a certified court reporter. The superior court denied the motion for reconsideration.

The Estate appeals the summary judgment order and the order denying reconsideration.

ANALYSIS

The Estate assigns error to the superior court's exclusion of the transcript from the DOL administrative hearing, the superior court's order for summary judgment in favor of the State and Trooper Sanders, and the superior court's denial of the Estate's motion for reconsideration of the summary judgment order. We hold that the superior court did not err in not considering the transcript from the DOL hearing, and did not err in granting summary judgment or in denying the motion for reconsideration.

---

[2] The record before us does not include any rulings made by the superior court regarding the admissibility of the alleged transcript.

A.     STANDARD OF REVIEW

When reviewing a denial of summary judgment, we engage in the same inquiry as the trial court. *Robb v. City of Seattle*, 176 Wn.2d 427, 432, 295 P.3d 212 (2013). We conduct a de novo review of the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.* at 432–33. We also review issues of law de novo. *Id.* at 433.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* "If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

B.     ROGERS'S TESTIMONY BEFORE THE DOL WAS NOT ADMISSIBLE

The Estate argues that the transcript of Rogers's testimony at the DOL administrative hearing was admissible in the summary judgment proceeding under ER 804(b)(1). We disagree.

"We review the admissibility of evidence in summary judgment proceedings de novo." *Parks v. Fink*, 173 Wn. App. 366, 375, 293 P.3d 1275, *review denied*, 177 Wn.2d 1025 (2013). ER 804 provides exceptions to the rule against hearsay[3] when the declarant is unavailable. One of those exceptions is for "Former Testimony" by the declarant. ER 804(b)(1). The rule provides:

---

[3] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is not admissible unless specifically provided for by the rules of evidence, other court rules, or by statute. ER 802.

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

ER 804(b)(1).

Here, the testimony offered does not satisfy the exception to hearsay under ER 804(b)(1) because Rogers was not subject to cross-examination by a party with similar motives to develop his testimony. At issue in the DOL hearing was whether Rogers's driving privileges should be reinstated. Rogers's contention at the DOL hearing was that he was confused about the blood test. Therefore, a party opposing Rogers in the DOL hearing would have needed to cross-examine Rogers on his assertions that he was confused by the instructions regarding his blood test, which occurred after his arrest.

In contrast, here, the issue is whether the State had reasonable suspicion to stop, and probable cause to arrest, Rogers. Thus, a party opposing Rogers in the present suit would be concerned with cross-examining Rogers on facts leading up to the arrest, not what occurred after the arrest. Therefore, the superior court properly excluded the testimony from the DOL hearing because the testimony offered does not satisfy the exception to hearsay under ER 804(b)(1).

Even if the testimony was admissible under a different rule or statute, nothing in the testimony created an issue of material fact that would allow this case to survive summary judgment. As explained, the testimony from the DOL hearing developed facts that occurred *after* Rogers's arrest. The only facts relevant to the present summary judgment proceeding are those that explain the circumstances leading up to the stop and the arrest. Thus, even if Rogers's

testimony at the DOL hearing was otherwise admissible, nothing within the testimony created an issue of material fact that would allow this case to survive summary judgment.

C.      42 U.S.C. § 1983 CLAIMS

The Estate argues that the superior court erred in dismissing the Estate's 42 U.S.C. § 1983 claims, which were premised on Trooper Sanders's traffic stop and arrest of Rogers, and which the Estate alleges violated Rogers's Fourth Amendment rights. We hold that the superior court properly dismissed the Estate's § 1983 claims because the stop and the arrest were proper.

1.      Legal Principles

a. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides a cause of action to citizens who have been deprived of their rights under the constitution and laws by someone acting under the color of state law. It states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Washington courts have concurrent jurisdiction with the federal courts to hear these claims. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11, 829 P.2d 765, *cert. denied*, *sub nom.*, *Robinson v. City of Seattle*, 506 U.S. 1028 (1992); *Haywood v. Drown*, 556 U.S. 729, 734-35, 129 S. Ct. 2108, 173 L. Ed. 2d 920 (2009).

"The constitutionality of a warrantless stop is a question of law we review de novo." *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008). A warrantless traffic stop is a

constitutional investigative stop if it is based upon at least a reasonable articulable suspicion of either criminal activity or a traffic infraction. *State v. Chacon Arreola*, 176 Wn.2d 284, 292–93, 290 P.3d 983 (2012). A warrantless arrest is constitutional if it is based on probable cause. *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). "Probable cause exists when the arresting officer is aware of facts or circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed." *Id.* (emphasis omitted).

Here, the Estate's § 1983 challenge fails on the merits as a matter of law. First, the traffic stop was based on a reasonable articulable suspicion that Rogers had committed a traffic infraction. Specifically, others had reported Rogers "having problems [maintaining] lane travel," and Trooper Sanders's corroborating observations of Rogers having problems maintaining a direct line of travel, driving on the centerline twice, and drifting and jerking from right to left. CP at 38.

Second, the arrest was based on probable cause that Rogers had committed a crime. Specifically, Trooper Sanders observed: erratic driving before the stop; "a mild odor of alcohol emitting from [Rogers's] vehicle"; "the odor of alcohol and marijuana emitting from Rogers'[s] person"; Rogers had "[b]lood shot, droopy, dilated and watery eyes"; Rogers "had slurred speech and unnecessarily repeated him self [sic]"; Rogers "attempted to hide marijuana and drug paraphernalia from [Trooper Sanders]"; Rogers "failed the field sobriety tests"; and Rogers stated that he had a drink earlier in that night. CP at 39, 95.

On the facts of this case, Trooper Sanders's warrantless stop and arrest of Rogers were constitutionally justified as a matter of law. Therefore, the Estate's § 1983 challenge to the constitutionality of the stop and arrest fails on the merits.

D.     TRESPASS, NEGLIGENCE, AND CONVERSION CLAIMS

The Estate argues that, because the traffic stop and arrest were "invalid," the State is liable for trespass and negligence claims under the doctrine of *respondeat superior* for Trooper Sanders's actions. Br. of Appellant at 21. Because the traffic stop, the arrest, and the impoundment of Rogers's truck were lawful, we disagree.

First, as explained above, Trooper Sanders's actions in stopping and subsequently arresting Rogers were constitutional because they were supported by a reasonable articulable suspicion and probable cause, respectively. *See*, Section C, *supra*. Thus, we hold that the State is not liable for trespass or negligence under a theory of *respondeat superior* for the traffic stop and arrest.

Second, impoundment of Rogers's truck after his arrest was lawful. RCW 46.55.113(2)(d) provides that "a police officer may take custody of a vehicle, at his or her discretion, and provide for its prompt removal to a place of safety under any of the following circumstances: . . . Whenever the driver of a vehicle is arrested and taken into custody by a police officer." Here, Rogers was driving his truck before he was arrested and taken into custody by a police officer, Trooper Sanders. Trooper Sanders was, therefore, authorized under RCW 46.55.113(2)(d) to take custody of Rogers's truck. Thus, the State is not liable for conversion because Trooper Sanders's impoundment was lawful.

No. 49123-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, J.

_____
Maxa, A.C.J.